--------
BRANDON J. HARRISON, Judge *891 Jefferson Hospital Association, Inc., d/b/a Jefferson Regional Medical Center; Continental Casualty Company; Jefferson Regional Medical Center Preferred Provider Organization; and Jeff Ballard (collectively "Jefferson") appeal the circuit court's order granting Whitney Smith's motion to compel discovery. Jefferson argues that the circuit court erred in its interpretation of Arkansas Code Annotated section 16-46-105 (Supp. 2017). We reverse and remand to the circuit court.
On 26 February 2014, Doris Smith underwent an outpatient procedure at Jefferson, specifically, a CT scan with contrast. Approximately twenty minutes after the contrast media was administered, Smith experienced an "allergy-like reaction" and was immediately transported to the emergency room. On 19 September 2014, she had a second CT scan with contrast; a reaction from that scan resulted in her death. At some point that is not clear from the record, Whitney Nicole Smith, individually and as special administratrix of Doris Smith's estate, sued numerous parties, including Jefferson, doctors, radiologists, and insurers.
In September 2017, Smith moved to compel discovery, asserting that a global report on the 26 February 2014 incident had been created pursuant to Jefferson's Global Reporting System (the System). Smith sought a copy of that report and an order requiring Jefferson to answer all questions regarding the reporting of the incident. Jefferson responded that the information sought by Smith was privileged and protected under Ark. Code Ann. § 16-46-105 (Supp. 2017), which governs discoverability of records of, and testimony before, committees reviewing and evaluating the quality of medical or hospital care. Jefferson asserted that the System exists for the use of the Jefferson Quality Committee, that the reports are not considered part of the patient's medical record, and that the reports are maintained by the quality committee for peer review and quality assurance investigations. Thus, it argued, the report falls within the privilege of section 16-46-105. Jefferson also noted that according to hospital records, there was no global report filed on the February 26 incident, but there was a global report submitted on the September 19 incident.
Smith amended her motion to compel to include the System report for the September 19 CT scan. In reply to Jefferson's objection to the motion to compel, Smith argued that the requested documents fell within an exception to the privilege, which states that the privilege shall not be construed to apply to "incident reports or other records with respect to the care or treatment of any patient or to affect the discoverability or admissibility of such records." Ark. Code Ann. § 16-46-105(c).
The circuit court convened a hearing on 10 October 2017. After hearing arguments from counsel, the court ordered Jefferson to provide the System report from the September 19 incident for an in camera inspection.[1] The court also ordered that Jefferson provide "all related records and/or reports that were generated as a result of ... that report."
*892 The court convened a second hearing on 7 November 2017. At the onset, the court expressed its displeasure with the packet of documents received from Jefferson, calling it "incomplete." The court called Louise Hickman, Jefferson's vice president and chief nursing officer, to the stand for questioning. She confirmed that there were no quality-assurance documents generated for the February 26 incident but that there were documents generated and a "review by the quality department at that time, in conjunction with the risk management, to investigate the report that was filed here on September the 19th." She explained that not every incident goes to a committee; instead, "[i]t is reviewed by the quality department. [It is] investigated with the parties involved; and if it is determined at that time, then it goes through the committee." Hickman did not know if there was a quality-assurance-committee review regarding the September 19 incident. She said, "If it's determined there's no tracking or trending or no peer review or any further action that's needed, that potentially may not even, you know, go further to this committee." The court reviewed the contents of the packet with Hickman, and she agreed that several of the documents in the packet should be part of Doris Smith's medical records.
The court ordered that Jefferson provide (1) the hospital's quality-assurance policy and (2) the names of the members of the quality-assurance committee, and the court again ordered any relevant minutes, reports, or records. The court required this information be provided within twenty-four hours.
On November 13, the circuit court granted Smith's motion to compel in its entirety. The court found that there had been neither a quality-assurance-committee meeting nor a peer-review meeting conducted in Ms. Smith's case and that there were no related committee minutes, records, or reports. The court ordered Jefferson to "provide copies of ALL documents provided to the Court for in camera inspection to counsel for the Plaintiffs." Jefferson immediately filed a motion to stay the order compelling discovery and for findings pursuant to Ark. R. Civ. P. 26(f). The court filed an amended order on November 14 that incorporated the previous order and explicitly found that
the documents Plaintiffs seek are not privileged. Louise Hickman, Jefferson Vice President and Chief Nursing Officer[,] testified that there had been no quality assurance or peer review proceeding in this case but some information was gathered, and emails were exchanged by Jefferson employees who may or may not have been part of the Quality Assurance Committee. The Court finds that these emails amount to no more than a conversation between employees. The Court finds that the Objecting Defendants are not permitted to gather damning evidence then stamp it as "quality assurance" or "peer review" then not have a quality assurance committee proceeding and hide behind the statutory privilege. The Court doesn't believe that this was the intent of the Legislature[.]
The court granted Jefferson's motion to stay the order compelling discovery so that it could pursue an interlocutory appeal. Jefferson timely petitioned the supreme court for permission to proceed with an interlocutory appeal, and permission was granted on 4 January 2018. On 30 January 2018, the supreme court transferred the case to this court.
We review issues of statutory interpretation de novo. See DeSoto Gathering Co. LLC v. Hill , 2017 Ark. 326, 531 S.W.3d 396. The primary rule of statutory interpretation is to give effect to the intent *893 of the legislature. Keep Our Dollars in Independence Cty. v. Mitchell , 2017 Ark. 154, 518 S.W.3d 64. We construe the statute just as it reads, giving the words their ordinary and usually accepted meaning in common language. Id. When the language is plain and unambiguous, this court determines legislative intent from the ordinary meaning of the language used. Valley v. Pulaski Cty. Cir. Ct., Third Div. , 2014 Ark. 112, 431 S.W.3d 916. Statutory language is ambiguous if it is open to more than one construction. Id. When a statute is ambiguous, this court must interpret it according to legislative intent, and our review becomes an examination of the whole act. Id.
Arkansas Code Annotated section 16-46-105 provides in pertinent part:
(a)(1)(A) The proceedings, minutes, records, or reports of organized committees of hospital medical staffs or medical review committees of local medical societies, or a committee organized by and operating pursuant to a written plan or policy under the auspices of a professional corporation or a professional limited liability company whose members are licensed to practice medicine in this state, having the responsibility for reviewing and evaluating the quality of medical or hospital care, and any records, other than those records described in subsection (c) of this section, compiled or accumulated by the administrative staff of such hospitals or a physician group peer review committee as defined under § 20-9-501 in connection with such review or evaluation, together with all communications or reports originating in such committees, shall not be subject to discovery pursuant to the Arkansas Rules of Civil Procedure or the Freedom of Information Act of 1967, § 25-19-101 et seq., or admissible in any legal proceeding and shall be absolutely privileged communications.
(c) Nothing in this section or § 20-9-308 shall be construed to apply to original hospital medical records, incident reports, or other records with respect to the care or treatment of any patient or to affect the discoverability or admissibility of such records.
On appeal, Jefferson argues that the circuit court's decision turned on its erroneous interpretation of the quality-assurance privilege found in subsection (a)(1)(A) as protecting only documents and information gathered pursuant to a quality review that subsequently becomes part of an official committee proceeding. Jefferson contends that this limited reading of the statute directly conflicts with the plain language of the statute and the legislative intent.
Jefferson asserts that the plain language of the statute is clear and unambiguous and applies to
proceedings, minutes, records, or reports of organized committees of hospital medical staffs ... having the responsibility for reviewing and evaluating the quality of medical or hospital care, and any records ... compiled or accumulated by the administrative staff of such hospitals ... in connection with such review or evaluation [.]
Ark. Code Ann. § 16-46-105(a)(1)(A) (emphasis in appellant's argument). The statute further provides that such documents are not subject to discovery and are "absolutely privileged." Id. Thus, according to its plain language, the privilege extends beyond documents and information presented at formal committee proceedings; it also protects documents compiled by administrative staff in connection with a quality review. Jefferson contends that if the legislature meant to protect only documents and records from formal committee *894 proceedings, it would not have added the italicized portion above.
Jefferson explains that it created a quality-assurance process, including the global-reporting policy, with the intention of its process remaining confidential pursuant to the statute. The System's stated purpose is to "provide a confidential mechanism for identification, tracking, trending and follow-up of all occurrences that pose an actual [or] potential risk to patients, visitors and staff for use in the review, evaluation and continuous improvement of quality care and patient safety by the appropriate Quality Improvement and Peer Review Committees." Global reports are made confidentially to promote staff usage of the internal reporting system, and all global reports are reviewed by the Quality Management Department. The report is then routed to the appropriate department manager, and once a response from the department manager is received, the case is reviewed for any trends or recurrent problems requiring further review or investigation. Only then does the global report become subject to an official committee proceeding.
Jefferson further explains that the global report associated with the September 19 incident, as well as the documents, reports, and communications compiled in connection with that global report, were created and submitted per the policies of the System and were used by the quality-assurance department to investigate the incident and determine whether it warranted further examination by the quality-review committee. And while these records were ultimately not submitted to the quality-review committee as part of a formal proceeding, they were compiled by administrative staff for the sole purpose of quality review. So, Jefferson argues, the documents fall squarely under the protection of the statute.
In direct contrast, Smith argues that a plain reading of the statute "clearly limits the quality assurance privilege to proceedings, minutes, records, or reports of organized committees prepared at the direction of an organized committee for committee purposes." Smith asserts that Jefferson's interpretation of the statute is overly broad, would extend the statute to include any report reviewed by hospital administrative staff, and would eliminate the exemption to privilege found in subsection (c). Smith further contends that the System was being used as a "tool for controlling loss prevention and not quality of patient care."
In support, Smith cites Cochran v. St. Paul Fire and Marine Insurance Co. , 909 F.Supp. 641 (W.D. Ark. 1995), in which the federal district court held that medication incident reports, which the hospital routinely generated when there was variance between a doctor's order and the actual administration of drugs, was not protected from discovery under Ark. Code Ann. § 16-46-105(a). The district court held that "the medication incident report is discoverable under subsection (c) of § 16-46-105. It is clear that the report was not prepared by or at the direction of any organized committee for committee purposes. Nor does it appear that it was prepared or accumulated for the administrative staff in connection with such review or evaluation." Id. at 644.[2]
*895 In reply, Jefferson reiterates that the statute does not condition the privilege's applicability on whether a document was part of a formal committee meeting or whether the author of the document was a committee member. What matters to it is that the records were "compiled or accumulated ... in connection with such review or evaluation[.]" Ark. Code Ann. § 16-46-105(a)(1)(A). Jefferson contends that "[t]he position adopted by the circuit court and advanced by the Appellee would result in keeping information confidential only if the adverse incident ultimately culminated in an official committee meeting or proceeding." Jefferson contends this is inconsistent with the language of the statute and the real-world application of the quality-assurance process.
In its order, the court found that Jefferson was "not permitted to gather damning evidence then stamp it as 'quality assurance' or 'peer review' then not have a quality assurance committee proceeding and hide behind the statutory privilege." We hold that the circuit court misinterpreted the statute by finding that a committee proceeding is a prerequisite to applying the statutory privilege. The statutory privilege encompasses records compiled by hospital administrative staff "in connection with" its quality-review process, not just the records from those cases that are ultimately referred to a committee. Because the circuit court applied an incorrect interpretation of the statute, we reverse and remand for the court to reconsider the motion to compel. We also advise the circuit court to evaluate each document separately to determine whether it falls within the statutory privilege. We mention this point because pursuant to Hickman's testimony, Jefferson agrees that at least some of the documents are not privileged and should be available as part of Doris Smith's medical records.
Reversed and remanded.
At this hearing and at later hearings, the circuit court repeatedly refers to the second incident as occurring on September 14, not September 19.
Smith makes the additional argument that the documents are discoverable under subsection (c); however, the circuit court did not rule on this argument, so we will not address it. See Gwin v. Daniels , 357 Ark. 623, 184 S.W.3d 28 (2004) (explaining that failure to obtain a ruling precludes review of an issue because, under appellate jurisdiction, this court is limited to reviewing a ruling or order of a lower court).