Cite as 2019 Ark. App. 482

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-17-924

|  |  |
|---|---|
| VICTOR BERNARD WILLIAMS, M.D.<br><br>APPELLANT<br><br>V.<br><br>BAPTIST HEALTH D/B/A<br>BAPTIST MEDICAL CENTER ET AL.<br><br>APPELLEES | **Opinion Delivered:** October 23, 2019<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SIXTH DIVISION<br>[NO. 60CV-14-808]<br><br>HONORABLE TIMOTHY DAVIS FOX, JUDGE<br><br>AFFIRMED IN PART; REVERSED AND REMANDED IN PART |

**LARRY D. VAUGHT, Judge**

The appellant, Dr. Victor Williams, is an African American surgeon who had a staff appointment and clinical privileges at Baptist Health Medical Center (Baptist Health) in Little Rock from 2003 until the hospital terminated their relationship on April 14, 2011. The termination followed an internal peer-review process that found Dr. Williams provided substandard care in four of his surgical cases. As required by state and federal law, Baptist Health reported its adverse action to the Arkansas State Medical Board, which prepared to take action regarding Dr. Williams's medical license in 2014.

Dr. Williams subsequently sued Baptist Health, the hospital administrator, and several doctors who served on the peer-review committees, the Arkansas State Medical Board (Board), and Dr. John Hearnsberger, individually and as chairman of the Board. The

complaint sought monetary damages and injunctive relief based on thirteen causes of action alleging defamation, tortious interference with contracts, violations of the Arkansas Constitution, and violations of the Arkansas Civil Rights Act, including discrimination under Arkansas Code Annotated section 16-123-107 and retaliation under Arkansas Code Annotated section 16-123-108. The complaint also alleged that Baptist Health failed to follow its own bylaws when it terminated Dr. Williams's staff membership and clinical privileges.

The circuit court granted summary judgment on the claims against Dr. Hearnsberger. The circuit court also granted summary judgment to Baptist Health and the individual Baptist Health appellees on all but one claim alleging that the hospital failed to follow its bylaws. The circuit court heard testimony on that claim over the course of a three-day bench trial in February 2017, and it entered findings of fact and conclusions of law on April 21, 2017, that dismissed the claim with prejudice.

Dr. Williams now appeals, arguing that the circuit court erred in several respects. We affirm the order granting summary judgment to Dr. Hearnsberger. We also affirm the judgments in favor of the Baptist Health appellees on the six constitutional claims, the defamation claim, the retaliation claim, and the claim alleging that Baptist Health failed to follow its own bylaws during the peer-review process. We reverse the judgment in favor of the Baptist Health appellees on the discrimination and tortious-interference claims, however, because we agree that the circuit court abused its discretion when it denied Dr. Williams's motions to compel discovery of peer-review records regarding other physicians at Baptist Health.

## I. *Facts and Procedural History*

Dr. Williams obtained his license to practice medicine in Arkansas in 1999 and was board-certified to practice general, cardiothoracic, and vascular surgery. He became a member of the medical staff at Baptist Health in November 2003.

In January or February 2010, Dr. Guy Gardner, the chief medical officer at Baptist Health, reviewed several of Dr. Williams's surgery cases after receiving complaints from unidentified persons. Dr. Gardner's review caused him to be concerned about the standard of care that Dr. Williams had rendered in a handful of his cases, and he reported his concerns to Douglas Weeks, the administrator of the hospital, and to Dr. Tim Burson, the chief of surgery.

On February 5, 2010, Mr. Weeks and Dr. Burson met with Dr. Williams in Mr. Weeks's office at Baptist Health. According to Mr. Weeks, the purpose of the meeting was to inform Dr. Williams "of the seriousness of the information that Dr. Guy Gardner had obtained" and to explain that the cases would be subject to internal peer review that "could have serious implications" for his clinical privileges at the hospital. Mr. Weeks wanted Dr. Williams to "understand all of his options," including voluntary resignation of his staff appointment, "which would enable him to not have to report [an involuntary loss of privileges] to the National Practitioner Databank."

Dr. Williams declined to voluntarily resign his appointment, and the hospital's peer–review process began. The Surgery Control Committee discussed the surgical cases that Dr. Gardner identified at one of its regular meetings on March 11, 2010. Afterward, Dr. Burson, as chairman of the Surgery Control Committee, wrote a letter to Dr. Williams explaining

3

that the committee had reviewed eleven of his cases and identified suspected deviations from the standard of care in five of them. The letter identified the five cases under investigation and advised Dr. Williams that the committee scheduled the cases for discussion with him on April 5, 2010.

The Surgery Control Committee met with Dr. Williams on April 12.[1] The committee members in attendance included appellees Dr. Scott Marotti, Dr. Robert Moffett, Dr. Frederick Meadors, Dr. Robert Casali, and Dr. Burson. The committee gave Dr. Williams the opportunity to answer questions and explain his treatment of each of the patients. At the conclusion of the meeting, the committee found that Dr. Williams was unable to address significant concerns about the quality of care in each case. The committee noted, in particular, that Dr. Williams appeared unwilling to acknowledge or take responsibility for the substandard care that he rendered in each instance.

Consequently, on April 16, Dr. Burson wrote a letter to the Professional Staff Credentials Committee (Credentials Committee) to request that it investigate the five cases under review and take appropriate corrective action. Dr. Susan Keathley, the chair of the Credentials Committee, dispatched a letter to Dr. Williams later that day to notify him of the Surgery Control Committee's request and to inform him that the Credentials Committee would meet on April 21, to review and discuss the cases at issue. Dr. Keathley advised Dr. Williams to be prepared to address several concerns related to the five cases, including preoperative judgment; medical decision-making; technical ability; ability to

---

[1]Dr. Williams requested an additional ten days to review the patients' charts in order to prepare for the hearing. The Surgery Control Committee, it appears, granted him seven extra days.

4

recognize postoperative complications; lack of timely follow-up; documentation; and "unwillingness to acknowledge identified issues or take responsibility." The letter also informed Dr. Williams that these issues could result in suspension or termination of his staff appointment and clinical privileges at Baptist Health Medical Center and all other Baptist Health facilities.

The Credentials Committee met with Dr. Williams on April 21. The committee members in attendance included appellees Dr. Susan Keathley and Dr. Everett Tucker. Following the meeting, the Credentials Committee issued a report and recommendation that found Dr. Williams had deviated from the standard of care in four of the five cases and that there was sufficient evidence to warrant termination of Dr. Williams's staff appointment and clinical privileges. The committee therefore formally recommended termination and directed the immediate suspension of Dr. Williams's clinical privileges pending further review. Mr. Weeks notified Dr. Williams of the Credentials Committee's action by a letter dated April 21.

On May 25, Dr. Williams, through counsel, appealed the suspension and recommended termination to the Hearing Committee of the Professional Staff of Baptist Health Medical Center (Hearing Committee), which is composed of the chief (or vice chief) of each clinical department in the hospital. While that administrative appeal was pending, Baptist Health reported the suspension of Dr. Williams's clinical privileges to the National Practitioner Databank and the Board.[2] The Board voted to investigate the matter, requested

_____

[2]Baptist Health reported the suspension of Dr. Williams's clinical privileges to the National Practitioner Databank on June 25, 2010. As we discuss, *infra*, Dr. Williams claims

5

that Dr. Williams appear, and obtained the medical records of the patients involved in Baptist Health's decision to take corrective action. At Dr. Williams's request, however, the Board postponed further proceedings to allow Dr. Williams to pursue an administrative appeal with Baptist Health and to allow him to participate in a physician education and assessment program.

On February 28, 2011, the Hearing Committee conducted a five-hour hearing and heard testimony from witnesses on behalf of Dr. Williams and the Credentials Committee. The following day, the Hearing Committee issued its report and recommendations affirming the Credentials Committee's decision.

Dr. Williams timely appealed the Hearing Committee's decision to the Board of Trustees' Appellate Review Committee (Appellate Review Committee) on March 24, 2011. After reviewing the hearing record and written statements from both parties, the Appellate Review Committee affirmed the Hearing Committee's report and recommendations on April 12, 2011. The Appellate Review Committee found, in particular, that the staff bylaws had been followed during the peer-review process; that the decision of the Hearing Committee was based on substantial evidence; and that the Hearing Committee's decision "was a reasonable one in light of the Hospital's duty to the public." Mr. Weeks notified Dr. Williams in writing on April 14, 2011, that his clinical privileges had been terminated.

---

that only this report—and not those that followed the termination of his privileges almost a year later—was defamatory.

The proceedings before the Board resumed on June 8, 2012, when the Board accepted Dr. Williams's offer to attend a physician-assessment program in lieu of rendering a disciplinary decision. The Board later determined that Dr. Williams did not comply with the requirements of the assessment program, however, and it ultimately voted to revoke his license on April 3, 2014.[3]

On February 25, 2014, shortly before the Board voted to revoke Dr. Williams's license, Dr. Williams filed a complaint in the Pulaski County Circuit Court for damages and injunctive relief against Baptist Health; Douglas Weeks, in his individual and official capacity as the hospital administrator; several doctors individually and in their official capacities as members of the peer review committees at Baptist Health; the Arkansas State Medical Board; and Dr. John Hearnsberger individually and in his official capacity as chairman of the Board. The complaint generally alleged that all the defendants acted "jointly, maliciously and in concert" to "drive [Dr. Williams] out of the practice of medicine in Little Rock, North Little Rock, and Pulaski County . . . because of his race . . . and [to eliminate] economic competition."

Regarding the Baptist Health appellees in particular, Dr. Williams alleged that they "reviewed or caused to be reviewed medical records of [Dr. Williams's] patients in the hope of finding something that could be used to justify suspension, revocation, or denial of [his] medical staff privileges[.]" Dr. Williams alleged that he was not afforded a fair procedure

---

[3]Dr. Williams did not appear at the April 3, 2014, hearing that led to the revocation of his license, apparently because the Board did not properly serve him with notice of the hearing. Dr. Williams successfully appealed the administrative decision on that basis, and his license was reinstated.

during the peer-review process at Baptist Health and, because of his race, was treated more harshly than similarly situated white doctors whose cases were also subjected to internal peer review. Regarding the Board and Dr. Hearnsberger, the complaint alleged that Dr. Hearnsberger had a conflict of interest that caused him to be biased in favor of taking adverse action against Dr. Williams and that the alleged bias tainted other members of the Board.

Based on these and other alleged facts, the complaint asserted thirteen claims for relief, including six counts alleging that Dr. Hearnsberger and the Baptist Health appellees had violated several provisions in the Arkansas Constitution. The complaint further alleged that the termination of Dr. Williams's staff appointment and clinical privileges was retaliatory and racially discriminatory in violation of his rights under the Arkansas Civil Rights Act and that the Baptist Health appellees were liable for defamation in connection with the report that the hospital made to the National Practitioner Databank. The complaint also alleged two counts of tortious interference with contract, asserting that the appellees' adverse actions interfered with Dr. Williams's contracts with referral physicians, insurance companies, other hospitals, and his patients. Finally, the complaint alleged that the Baptist Heath appellees failed to comply with the medical-staff bylaws when they terminated his staff appointment and clinical privileges.

The circuit court granted Dr. Hearnsberger's motion for summary judgment and dismissed him from the lawsuit in his individual capacity in an order entered on December 8, 2014.[4] The Baptist Health appellees, in three separate motions, successfully moved for

---

[4]The circuit court later entered a consent order dismissing the Arkansas State Medical Board and Dr. Hearnsberger in his official capacity on November 5, 2015.

summary judgment on all but one of the claims in the complaint. The circuit court, interpreting the bylaws claim to be a "due process type claim," determined that there were genuine issues of material fact regarding whether Baptist Health substantially complied with the procedure in its bylaws when it terminated Dr. Williams's staff appointment and clinical privileges. The circuit court dismissed the claim with prejudice, however, after a three-day bench trial in February 2017.

Dr. Williams now appeals, alleging that the circuit court erred by denying him a jury trial; by denying his motions to compel discovery of peer-review information concerning white physicians who practiced at Baptist Health; by finding that Baptist Health substantially complied with its bylaws; and by granting summary judgment in favor of the Baptist Health appellees and Dr. Hearnsberger.

II. *Discussion*

A. Motions to Compel

1. *Abuse of discretion*

While discovery was ongoing in the circuit court, Dr. Williams propounded several interrogatories that sought information about other surgeons who had clinical privileges at Baptist Health. The interrogatories collectively asked Baptist Health to provide the name of every physician who had been called to meet with the Surgery Control Committee during a certain time period; to state whether particular surgeons—including several members of the Surgery Control Committee—had been required to meet with the committee; and to state whether Baptist Health had become aware of substandard care or misconduct of other surgeons without taking disciplinary action. Several interrogatories also sought the identities

of the physicians whose complaints motivated Dr. Gardner to review Dr. Williams's surgical cases. Baptist Health refused to answer the interrogatories by invoking the peer-review privilege set forth in Arkansas Code Annotated sections 16-46-105 and 20-9-503, which together provide that the proceedings and records of medical peer-review committees are not subject to discovery under the Arkansas Rules of Civil Procedure or the Freedom of Information Act.

Dr. Williams filed a motion to compel responses to the interrogatories, arguing that federal courts have refused to recognize a peer-review privilege when, as here, the records are sought to advance a claim of disparate treatment based on race. *See, e.g.*, *Virmani v. Novant Health Inc.*, 259 F.3d 284, 289, 293 (4th Cir. 2001). Dr. Williams also contended that Arkansas law allowed disclosure to him in any event because Arkansas Code Annotated section 16-46-105(b)(2) provides an exception to the peer-review privilege when the information is sought in a legal action filed by the doctor "who has been subjected to censure or disciplinary action" by a medical peer-review committee. The circuit court apparently disagreed and denied the motion to compel in a two-sentence order entered on December 8, 2014.

Dr. Williams subsequently propounded requests for production and deposition questions that sought similar peer-review information and, as before, moved to compel responses when the hospital invoked the privilege. The circuit court also summarily denied those motions in an omnibus order entered on February 2, 2017.

Dr. Williams now contends that the circuit court abused its discretion by denying his motions to compel. As he did below, he asserts that federal cases persuasively demonstrate

that the interest served by advancing his civil rights claim—the elimination of discrimination—outweighs the interest in promoting candor in the medical peer-review process that is manifest in sections 16-46-105 and 20-9-503. Dr. Williams also asserts that he squarely qualifies for the exception in section 16-46-105(b)(2).

The Baptist Health appellees respond that federal cases are inapposite to the application of the state-law privilege and that Dr. Williams cannot use the exception in section 16-46-105(b)(2) to obtain the peer-review records of other physicians. The exception, they say, limits Dr. Williams to the records of his own peer-review proceedings. We disagree.

A circuit court has broad discretion in matters pertaining to discovery, and the exercise of that discretion will not be reversed on appeal absent an abuse of discretion that is prejudicial to the appealing party. *E.g.*, *Gerber Prods. Co. v. CECO Concrete Constr.*, 2017 Ark. App. 568, at 6, 533 S.W.3d 139, 143. To have abused that discretion, the circuit court must have not only made an error in its decision, but also must have acted improvidently, thoughtlessly, or without due consideration. *Id.*

Additionally, our review of a circuit court's construction of a statute is de novo. *See Jefferson Hosp. Ass'n, Inc. v. Smith*, 2019 Ark. App. 27 at 5, 569 S.W.3d 889, 892. "The primary rule of statutory interpretation is to give effect to the intent of the legislature," and this court will construe a statute "just as it reads, giving the words their ordinary and usually accepted meaning in common language." *Id.* at 5, 569 S.W.3d at 893. "When the language is plain and unambiguous, this court determines the legislative intent from the ordinary meaning of the language used." *Id.*

Enacted in 1975, Arkansas Code Annotated section 20-9-503(a)(1) provides that "[t]he proceedings and records of a peer review committee shall not be subject to discovery or introduction into evidence in any civil action against a provider of professional health services arising out of the matters which are subject to evaluation and review by the committee." *See also* Act of February 18, 1975, No. 191, § 4, 1975 Ark. Acts 269, 271. The statute also forbids any person "who was in attendance at a meeting of the committee" from testifying in "any such civil action." *See id*.; Ark. Code Ann. § 20-9-503(a)(2) (Repl. 2018).

Arkansas Code Annotated section 16-46-105, enacted two years later, more comprehensively provides that

> [t]he proceedings, minutes, records or reports of organized committees of hospital medical staffs . . . having the responsibility for review and evaluating the quality of medical or hospital care, and any records [other than medical records, incident reports, and any other patient-care records] compiled or accumulated by the administrative staff of such hospitals or a physician group peer review committee . . . in connection with such review or evaluation, together with all communications or reports originating in such committees, shall not be subject to discovery pursuant to the Arkansas Rules of Civil Procedure or the Freedom of Information Act . . . or admissible in any legal proceeding and shall be absolutely privileged communications.
>
> . . . .
>
> Neither shall testimony as to events occurring during the activities of such committees be subject to discovery pursuant to the Arkansas Rules of Civil Procedure or the Freedom of Information Act . . . or admissible [in any legal proceeding].

Ark. Code Ann. § 16-46-105(a)(1) & (a)(2) (Supp. 2017); *see also* Act of March 16, 1977, No. 445, § 3, 1977 Ark. Acts 1055, 1056. Unlike section 20-9-503, however, section 16-46-105 has the following exception for legal actions, like the one here, that are filed by doctors who were subjected to peer review:

[N]othing in this section shall be construed to prevent discovery and admissibility if the legal action in which such data is sought is brought by a medical practitioner who has been subjected to censure or disciplinary action by such agency or committee or by a hospital medical staff or governing board.

Ark. Code Ann. § 16-46-105(b)(2).

While Dr. Williams is quite correct that the federal courts have refused to apply a medical peer-review privilege to bar the production of such evidence to doctors attempting to establish a claim of discrimination, *see, e.g.*, *Virmani*, 259 F.3d at 289–90, we are convinced that Dr. Williams's right to the peer-review evidence is already established here by the plain language of section 16-46-105(b)(2), which unambiguously provides an exception to the peer-review privilege when the plaintiff in the legal action is, as here, the doctor who was adversely affected by the peer-review proceedings. We see nothing in the language of the exception that supports Baptist Health's contention that it only "allows a physician such as [Dr. Williams] the right to obtain the medical records and documents reviewed and used in his own peer review proceedings."

Additionally, we do not read section 20-9-503(a)(1) to forbid the use of peer-review evidence in a doctor's lawsuit—like the one here—that challenges the peer-review process, as Baptist Health claims. Rather, the statute appears to prohibit using peer-review evidence in a lawsuit—such as a medical-malpractice action—*against* a doctor that is based on the same conduct that led to the doctor's discipline. Accordingly, because section 16-46-105(b)(2) allows the peer-review evidence that Dr. Williams sought in his motions to compel, we hold that the circuit court abused its discretion.

## 2. *Harmless error*

The Baptist Health appellees suggest, however, that reversal is not warranted in any event because the information that Dr. Williams sought "could not have saved the claims dismissed by summary judgment." We agree, but only with respect to the constitutional and defamation claims that Dr. Williams alleged against the Baptist Health appellees.

This court will not reverse a circuit court's abuse of discretion regarding discovery in the absence of a showing that the additional discovery would have changed the outcome of the case, *see Alexander v. Flake*, 322 Ark. 239, 249, 910 S.W.2d 190, 195 (1995), and we do not believe that the discovery error here warrants wholly reversing the three summary-judgment orders in favor of the Baptist Health appellees. The evidence regarding other physicians would not have helped Dr. Williams rebut Baptist Health's principal argument against his retaliation claim—that he failed to offer any evidence that he opposed an act of discrimination or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" involving a charge of discrimination. *See* Ark. Code Ann. § 16-123-108(a). The peer-review evidence also would not have helped Dr. Williams advance the six constitutional claims in the complaint, which, as we explain, *infra*, hinged on his allegation that Baptist Health acted in concert with the Board *after* the conclusion of the peer-review process in his case. The peer-review evidence also would have done nothing to help Dr. Williams survive summary judgment on his defamation claim, which focused only on the contents of the report that Baptist Health made to the Board and the National Practitioner Databank following his termination.

14

With that said, we are not convinced that the peer-review evidence would not have been of any use in proving Dr. Williams's remaining claims or to show malice to rebut the Baptist Health appellees' claims of statutory immunity. The ability to compare the proceedings in his case against those involving similarly situated white physicians, for example, could have enabled Dr. Williams to show a genuine issue of material fact regarding whether the Baptist Health appellees subjected him to disparate treatment. *See Virmani*, 259 F.3d at 289 (observing that medical peer-review evidence was "crucial" to a doctor's attempt to establish that he has been subject to disparate treatment on the basis of race).[5] Evidence showing disparate treatment or discriminatory intent, moreover, could have rebutted the Baptist Health appellees' claims of statutory immunity, which are qualified by the absence of malice, *see* Ark. Code Ann. §§ 17-1-102(a) and 20-9-502(a), and could have established improper conduct as a predicate for his tortious-interference claims. *See Baptist Health v. Murphy*, 2010 Ark. 358, at 15–16, 373 S.W.3d 269, 281–82. Accordingly, we reverse and remand the case for the circuit court to determine whether, once produced, the additional peer-review evidence would create a genuine issue of material fact on these issues.

## B. Other Arguments Challenging Summary Judgment

Dr. Williams additionally argues the circuit court erred by granting summary judgment to Dr. Hearnsberger and to the Baptist Health appellees for other reasons

---

[5]We are aware of the Baptist Health appellees' argument that Dr. Williams cannot prevail on his discrimination claim in any event because unlike its federal analogue, *see* 42 U.S.C. § 1985, the Arkansas Civil Rights Act does not expressly provide a cause of action for conspiracy. We disagree. While the Arkansas statute may not expressly provide a cause of action for conspiracy, the common law does. *See, e.g.*, *Faulkner v. Ark. Children's Hosp.*, 347 Ark. 941, 961–62, 69 S.W.3d 393, 406–07 (2002).

15

independent of the discovery that he was denied. As we explain more fully below, we reject Dr. Williams's assignment of error regarding Dr. Hearnsberger because he has not supported it with convincing argument or citation to legal authority. The same is true for Dr. Williams's challenge to the order granting summary judgment on his retaliation claim. We also hold that Dr. Williams's arguments challenging the circuit court's orders granting summary judgment on his defamation and constitutional claims against the Baptist Health appellees are without merit. Because we hold that the circuit court's discovery error warrants reversal of the orders granting summary judgment on the remaining claims against the Baptist Health appellees, we decline to reach Dr. Williams's additional arguments regarding those claims.

1. *Dr. Hearnsberger*

Dr. Hearnsberger filed a motion for summary judgment on August 8, 2014, wherein he argued that the claims against him in his individual capacity should be dismissed on the basis of judicial immunity, statutory immunity under Arkansas Code Annotated section 17-80-103, and expiration of the applicable statute of limitations. In response, Dr. Williams argued, *inter alia*, that summary judgment should be denied because the "Arkansas Savings Statute" tolled the statute of limitations, and genuine issues of material fact remained about whether Dr. Hearnsberger was entitled to judicial or statutory immunity. The circuit court rejected those arguments and granted summary judgment in favor of Dr. Hearnsberger in a two-sentence order entered on December 8, 2014. Dr. Williams now urges this court to reverse the circuit court's order. Because Dr. Williams fails to support his purported challenge with convincing argument, we decline his invitation to reverse.

16

This court has "long held that [it] will not consider an argument when the appellant presents no applicable authority or convincing arguments in its support." *Steele v. Lyon*, 2015 Ark. App. 251, at 5, 460 S.W.3d 827, 832. Dr. Williams does not make any discernible argument for reversal of the summary-judgment order regarding Dr. Hearnsberger. Indeed, after spending considerable time arguing that federal law preempts the statutory immunity claimed only by the Baptist Health appellees under Arkansas Code Annotated sections 17-1-102 and 20-9-502—not the immunity that Dr. Hearnsberger claimed under section 17-80-103—Dr. Williams merely asserts that "the December 9, 2014 Order granting summary judgment to defendant Hearnsberger in his individual capacity should be reversed." Because this is not convincing argument that warrants this court's review, we affirm the circuit court's order granting summary judgement to Dr. Hearnsberger.

2. *The Baptist Health appellees*

a. The alleged constitutional violations

The Baptist Health appellees filed three motions for partial summary judgment in this case. The first, which was filed on December 23, 2014, sought summary judgment on the six violations of the Arkansas Constitution that Dr. Williams alleged in his complaint. The Baptist Health appellees argued that they were entitled to judgment as a matter of law on these claims because they were not state actors. Baptist Health is a private entity, they said, and there was "simply no connection between Baptist Health, the individual Baptist Health appellees, and the State of Arkansas that could give rise to a cause of action for violation of [Dr. Williams's] constitutional rights." According to the Baptist Health appellees, the constitutional claims are not cognizable unless the action of the private hospital

17

was prompted by the State, and Dr. Williams failed to offer any proof that the termination of his privileges was at the State's behest. The circuit court agreed and granted the Baptist Health appellees' first motion for summary judgment in its entirety in an order entered on March 9, 2015. [6] We hold that the circuit court did not err by entering summary judgment on those claims.

While public hospitals are prohibited from acting in violation of the Arkansas Constitution, "it is generally held that private hospitals are not subject to the same standards as public hospitals." *Brandt v. St. Vincent Infirmary*, 287 Ark. 431, 434, 701 S.W.2d 103, 105 (1985) (internal citation omitted). There are circumstances, however, in which a private hospital will be considered public and subject to judicial review on constitutional claims. First, a private hospital will be considered public "when the relationship or nexus between the state and the institution is symbiotic in character and the state has so far insinuated itself into a position of interdependence that it must be recognized as a joint participant in the challenged activity." *Id.*, 701 S.W.2d at 105 (internal citations omitted). The nexus must be "sufficiently close so that the action of the institution may be fairly treated as that of the state itself" or, in other words, that the state "is *responsible* for the specific conduct of which the plaintiff complains." *Id.* at 435, 701 S.W.2d at 105 (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982) (emphasis original). Second, a private hospital will be considered public "when the institution is dedicated to a public purpose or may exercise some power delegated to it

---

[6]The first motion for summary judgment also addressed Dr. Williams's claim alleging a violation of the Deceptive Trade Practices Act, Ark. Code Ann. § 4–88–113 (Supp. 2017). On appeal, Dr. Williams does not allege that the circuit court erred by granting summary judgment on that claim.

by the state which is traditionally reserved exclusively to the state." *Id*. at 434, 701 S.W.2d at 105 (internal citation omitted).

In this case, there is no dispute that Baptist Health is a private hospital, and Dr. Williams does not point to any proof that the Board or any other state actor was responsible for the termination of his privileges at Baptist Health. Rather, he points only to alleged shortcomings in the Board proceedings that occurred *after* the hospital terminated his privileges and made its legally mandated report to the Board. Accordingly, because Dr. Williams failed to demonstrate a nexus between the Baptist Health appellees and the State and did not otherwise allege, much less demonstrate, that the hospital is dedicated to a public purpose or that its adverse action regarding his privileges was in any manner "traditionally reserved to the state," we hold that the circuit court did not err by granting summary judgment on Dr. Williams's constitutional claims.

b. The defamation claim

The Baptist Health appellees' second motion for summary judgment successfully challenged Dr. Williams's defamation claim, in which Dr. Williams alleged that the Baptist Health appellees

> acted with the purpose by their conduct to specifically defame [Dr. Williams] by reporting [Dr. Williams] to entities outside of Baptist Health d/b/a Baptist Health Medical Center false and incorrect information as well as stating that [Dr. Williams] practiced medicine below the applicable standard of care and such acts constituted Defamation under . . . the laws of the State of Arkansas because of his race and status.

Based on the factual allegations in the complaint, the Baptist Health appellees interpreted the claim as taking issue with the report that Baptist Health made to the Board and the National Practitioner Databank after revoking Dr. Williams's staff privileges. In their second

motion for partial summary judgment, the Baptist Health appellees argued that the defamation claim should be dismissed because the report to the National Practitioner Databank was "a true statement" and "was required to be reported by . . . federal law."

The circuit court granted summary judgment on the defamation claim in the order entered on March 9, 2015. Dr. Williams now argues that the circuit court erred when it determined that no genuine issue of material fact remained with respect to the June 25, 2010 report that Baptist Health made to the National Practitioner Databank. Specifically, Dr. Williams appears to argue that genuine issues of material fact remain regarding the truth of the report and whether the Baptist Health appellees acted with malice that would disqualify them from immunity under Arkansas Code Annotated section 17-1-102. Because Dr. Williams fails to demonstrate that the Baptist Health appellees made any false statements in the report to the National Practitioner Databank that would constitute defamation in the first instance, we hold that the circuit court did not err by granting the motion for summary judgment on this claim.

"To recover for defamation a plaintiff must prove six elements: (1) the defamatory nature of the statement of fact; (2) the statement's identification of or reference to the plaintiff; (3) publication of the statement by the defendant; (4) the defendant's fault in the publication; (5) the statement's falsity; and (6) the damages suffered by the plaintiff." *Sawada v. Walmart Stores, Inc.*, 2015 Ark. App. 549, at 10, 473 S.W.3d 60, 67. As these elements suggest, the substantial truth of the statement is a defense to a charge of defamation. *See Pritchard v. Times Sw. Broad., Inc.*, 277 Ark. 458, 463, 642 S.W.2d 877, 879 (1982).

The statements in the report that Baptist Health submitted to the National Practitioner Databank were true. They accurately described the adverse action the hospital had taken to that point and the reasons for its action. On April 21, 2010, the Credentials Committee issued a report and recommendation that found Dr. Williams's cases demonstrated that he exhibited poor preoperative judgment, poor medical decision-making, poor technical ability, an inability to recognize postoperative complications, lack of timely follow-up, and lack of timely responsiveness to one patient's needs. The committee recommended termination of Dr. Williams's staff appointment and clinical privileges and further directed "that all of Dr. Williams's Clinical Privileges be immediately suspended pending further proceedings."

Correspondingly, the report to the National Practitioner Databank stated that Baptist Hospital suspended Dr. Williams's clinical privileges on April 21, 2010, for "substandard or inadequate care" and explained the basis for its action in a manner that was consistent with the Credentials Committee's findings:

> [Dr. Williams] exhibited poor preoperative judgment, poor medical decision-making, poor technical ability, an inability to recognize post-operative complications, lack of timely follow-up and lack of timely responsiveness to [his] patients' needs.

Accordingly, while Dr. Williams may disagree with the sufficiency of the evidence supporting the suspension of his privileges, the contents of the report, which are mandated by law, *see generally* 42 U.S.C. § 11133-34; 45 C.F.R. §§ 60.1-60.22, nonetheless accurately reflect the adverse action taken by the committee, as well as its reasons for taking it. The circuit court did not err, therefore, by granting summary judgment on Dr. Williams's defamation claim.

21

c. The civil rights and tortious-interference claims

Dr. Williams additionally argues that the circuit court's order granting summary judgment on the alleged violations of the Arkansas Civil Rights Act, as well as his claims alleging tortious interference with contract, should be reversed for reasons that are independent of the discovery error. He argues, for example, that reversal is also warranted on his discrimination claim under Arkansas Code Annotated section 16-123-107 (Supp. 2017) because the circuit court failed to apply the *McDonnell Douglas* burden-shifting framework when it denied relief. Because we hold that the circuit court abused its discretion by denying Dr. Williams's motions to compel, we decline to reach his additional arguments regarding his discrimination and tortious-interference claims.

We cannot say the same to the extent that Dr. Williams independently challenges the March 9, 2015 order granting summary judgment on his claim alleging retaliation under Arkansas Code Annotated section 16-123-108. As we indicate above, we will not consider an argument when the appellant presents no applicable authority or convincing argument in its support. *Steele*, 2015 Ark. App. 251, at 5, 460 S.W.3d at 832. Dr. Williams does not make any perceptible argument that the circuit court independently erred by granting summary judgment on his claim of retaliation. Indeed, while he clearly challenges the circuit court's order granting summary judgment on his discrimination claim, he makes only oblique references to the retaliation claim. Even under the most liberal construction, these references fall short of convincing argument warranting this court's review. We hold, therefore, that the circuit court did not err by granting summary judgment on Dr. Williams's retaliation claim.

## C. Jury Trial

Dr. Williams next argues that the circuit court erred when it removed the trial on his claim alleging that Baptist Hospital violated its bylaws from its jury-trial docket as a sanction for failing to engage in mediation. According to Dr. Williams, his constitutional right to a jury, which he demanded in his complaint, could be waived only through "intentional relinquishment" and not, as here, by "forfeiture." Baptist Health responds that Dr. Williams was not entitled to a jury trial in the first instance because Arkansas has applied a rule of nonreview to a private hospital's decisions regarding medical-staff membership and clinical privileges, and the only recognized exception to the rule—for policies violating state law—does not apply in this case. Baptist Health further argues that Dr. Williams would not be entitled to a jury trial even if this court allows limited review to determine whether the hospital's termination of the doctor's privileges complied with its bylaws. According to the hospital, Dr. Williams would only be entitled to equitable relief, for which there is no constitutional right to a jury trial. Because we agree that Dr. Williams was not entitled to have a jury determine whether Baptist Health complied with its bylaws, we find no error.

As an initial matter—and contrary to the implication in Baptist Health's brief—the supreme court has not adopted a general rule of nonreview that would bind this court to a holding that Dr. Williams was not entitled to any sort of judicial review on his bylaws claim. Rather, the supreme court has so far applied the rule only to constitutional challenges, first holding in *Brandt*, 287 Ark. at 433–34, 701 S.W.2d at 105, that it would not review a psychiatrist's claim that St. Vincent Infirmary "unreasonably, capriciously, and arbitrarily" restricted her right to prescribe certain medications. The court would not review the claim

because private hospitals are not held to the same standard as public hospitals, which, like other state actors, "are prohibited from acting arbitrarily and capriciously" under the equal-protection and due-process clauses of the Constitution of the United States and the Arkansas Constitution. *Id.*; *see also Lubin v. Crittenden Hosp. Ass'n*, 295 Ark. 429, 430–31, 748 S.W.2d 663, 664–65 (1988) (rejecting a doctor's argument that the private hospital's disciplinary action deprived him of due process).

Dr. Williams did not allege any violation of the constitution in his bylaws claim, asserting only that Baptist Health's adverse action against him violated the hospital's bylaws and professional-staff rules, which "represented to [Dr. Williams] that [the hospital] would act in a fair and nondiscriminatory manner regardless of his race and status."[7] Therefore, despite the circuit court's interpretation of the claim as "a due-process type of cause-of-action," *Brandt* does not apply to bar judicial review.

Additionally, while Dr. Williams cannot take advantage of its provisions, the recent enactment of the Arkansas Peer Review Fairness Act, *see* Ark. Code Ann. §§ 20-9-1301 to −1313 (Repl. 2018),[8] indicates that judicial review of his claim is consistent with the public policy of this state. The intent of the Act is to ensure fairness in physician peer-review proceedings, *see* Ark. Code Ann. § 20-9-1302(b), and among other things, it provides

---

[7]Pleaded in this manner, Dr. Williams's bylaws claim is indistinguishable from his claim that the Baptist Heath appellees discriminated against him in violation of Arkansas Code Annotated section 16-123-107. Consequently, as we discuss below, the claim that the circuit court actually tried was appropriately more focused on whether Baptist Health complied with the procedure set forth in its bylaws.

[8]Dr. Williams could not avail himself of the review available under the Act because it applies only to peer-review activity occurring on or after August 1, 2017. *See* Ark. Code Ann. § 20-9-1312 (Repl. 2018).

standards for proper notice and a fair hearing. *See* Ark. Code Ann. §§ 20-9-1309 to −1310. Significantly for our purposes here, the Act also provides a remedy for violations of its procedural requirements, allowing physicians to petition for limited judicial review within sixty days of any adverse action. *See* Ark. Code Ann. § 20-9-1313(a). Therefore, because Dr. Williams's bylaws claim does not allege a constitutional violation, and it is more akin to the type of claim that now may be reviewed under the Arkansas Peer Review Fairness Act, we reject Baptist Health's suggestion that the rule of nonreview should be applied to bar any judicial review of the doctor's claim.

Whether the Arkansas Constitution entitled Dr. Williams to a jury trial, however, is another matter. Article 2, section 7 of the Arkansas Constitution provides that "the right of trial by jury shall remain inviolate, and shall extend to all cases at law, without regard to the amount in controversy[.]" Nevertheless, the "Arkansas Constitution does not assure the right to a jury trial in all possible instances, but rather in those cases where the right to a jury trial existed when the constitution was framed." *Murphy*, 2010 Ark. 358, at 13, 373 S.W.3d at 280. "Further, the right to a jury trial extends only to those cases that were subject to trial by jury at common law," and "[i]n equitable proceedings, there was no right to a jury at the common law." *Id*. Accordingly, "the constitutional right to a jury trial does not extend to equity." *Id*.

Dr. Williams is only entitled to equitable relief on his claim that Baptist Hospital failed to follow its own bylaws during the peer-review process. Arkansas Code Annotated sections 17-1-102 (Repl. 2018) and 20-9-502 declare that "there shall be no monetary liability on the part of, and no cause of action for damages shall arise against," members of

peer-review committees. Other jurisdictions that allow review of these types of claims, moreover, hold that only equitable relief, such as an injunction compelling compliance with a hospital's bylaws, is available. *See Egan v. St. Anthony's Med. Ctr.*, 244 S.W.3d 169, 174 (Mo. 2008); *see also Pulido v. St. Joseph Mem'l Hosp.*, 547 N.E.2d 1383, 1388 (Ill. App. Ct. 1989) ("[A] doctor claiming that a private hospital violated its bylaws in rendering a decision regarding his staff privileges is only entitled to relief requiring the hospital to comply with those bylaws before it renders its decision"). The Arkansas Peer Review Fairness Act is also instructive, expressly excluding civil damages from the relief available for similar claims under the Act. *See* Ark. Code Ann § 20-9-1313(c) & (e). Therefore, because there is no constitutional right to a jury trial for Dr. Williams's claim alleging that Baptist Health failed to comply with its bylaws, we affirm.

D. Substantial Compliance

Dr. Williams next argues that the judgment should be reversed because the circuit court erred by ruling that Baptist Health substantially complied with its bylaws when it terminated his staff membership and clinical privileges. Specifically, he appears to suggest the circuit court erred as a matter of law when it applied a "substantial compliance" standard of review to his claim. The proper standard, according to Dr. Williams, examines whether he was treated fairly throughout the peer-review process. The doctor also appears to argue that the circuit court should have weighed inconsistent testimony to find that the termination of his staff membership and privileges "had no factual basis" and was actually based on alleged improper motives. We hold that the circuit court did not err in either respect.

26

The standard of review on appeal from a bench trial is whether the circuit court's findings of fact were clearly erroneous or clearly against a preponderance of the evidence. *Travelers Cas. & Sur. Co. of Am. v. Cummins Mid-South, LLC*, 2015 Ark. App. 229, at 9, 460 S.W.3d 308, 315. "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made." *Jones v. John B. Dozier Land Tr.*, 2017 Ark. App. 23, at 6, 511 S.W.3d 869, 873. A circuit court's conclusion on a question of law, however, is reviewed de novo and is given no deference on appeal. *E.g.*, *Travelers*, 2015 Ark. App. 229, at 9, 460 S.W.3d at 315.

The majority of jurisdictions that allow judicial review of a private hospital's decisions regarding its medical staff recognize that there "must also be concern . . . for unnecessary judicial interference with those whose duty it is to make the decisions and who have the necessary expertise with which to act." *Owens v. New Britain Gen. Hosp.*, 643 A.2d 233, 241 (Conn. 1994). These courts are unwilling to "substitute their judgment on the merits for the professional judgment of medical and hospital officials with superior qualifications to make such decisions," *Mahmoodian v. United Hosp. Ctr., Inc.*, 404 S.E.2d 750, 756 (W.Va. 1991), and are inclined "to defer to those with the duty to govern." *Owens*, 643 A.2d at 241. Consequently, "if a private hospital's medical staff bylaws provide . . . basic procedural protections, and if the bylaws' procedures are followed substantially in the particular disciplinary proceeding, a court usually will not interfere with the medical peers' recommendation and the hospital's exercise of discretion on the merits." *Mahmoodian*, 404 S.E.2d at 756. Those courts, in other words, "will not impose judicial review on the merits

27

of a hospital's staffing decisions, but will act only to ensure substantial compliance with the hospital's bylaws." *Egan*, 244 S.W.3d at 174. Accordingly, because the majority of jurisdictions recognizing judicial review examine only whether a hospital substantially complied with the procedure in its bylaws, we hold that the circuit court did not err by applying that test in the instant case.

The evidence at trial demonstrated, moreover, that Baptist Health's bylaws and professional staff rules provide the basic procedural protections of notice and opportunity to be heard at each level of the peer-review process. The Credentials Committee must investigate any request for corrective action—such as the one it received from the Surgery Control Committee here—and, as part of that investigation, the committee "may afford the affected Practitioner an opportunity for an interview" in which the affected practitioner "shall be informed of the general nature of the request for corrective action, and shall be invited to discuss, explain, or refute said problem." The committee must promptly report the results of its investigation to the chief of staff, and the committee must take one or more actions regarding the request, including "mak[ing] a finding that there is sufficient evidence to warrant . . . a recommendation of, suspension, reduction, limitation or termination of Staff Appointment and/or Clinical Privileges," and "direct[ing] that a part or all of the Practitioner's Clinical Privileges be suspended pending further proceedings under Article Eight of the Staff Bylaws and Rule Eight."

The bylaws further provide that a physician who receives notice of any final adverse action, including a termination of a staff appointment or clinical privileges, "shall be entitled, upon timely and proper request," to a hearing and other appellate review. The chief

executive officer of the hospital "shall be responsible for giving prompt written notice of [any] adverse action," and among other things, the notice shall advise the affected physician of his or her right to appeal, the timing and manner of any appeal, and the consequences of any failure to do so.

The physician's appeal from the Credentials Committee's recommendation is conducted by a hearing committee of the executive committee of the staff. The physician is required to be present for the hearing, and he or she is entitled to be represented by counsel. The representative for the Credentials Committee and the physician are both permitted to call and examine witnesses; introduce exhibits; cross-examine any witness on any relevant matter; request that the record of the hearing be made by use of a court reporter; and submit a written statement at the close of the hearing.

After a hearing, the committee "shall make a written report of its findings and shall affirm, modify, or reject the original adverse action." The report, along with the hearing record and other documentation, is forwarded to the board of trustees, and the chief executive officer must "promptly" send a copy of the hearing-committee report to the physician via certified mail or personal delivery.

The physician may file a request for further appellate review by the board of trustees within seven days of receiving notice of the Hearing Committee's adverse action. The physician may request the right to submit a written statement, the right to make an oral statement before the Appellate Review Committee, as well as the consideration of "new or additional matters." After review of these materials, "the appellate review body may affirm,

modify, or reverse the adverse result or action, or in its discretion, may refer the matter back to the hearing committee for further review and recommendation[.]"

As we set forth in the factual portion of this opinion, Baptist Health substantially complied with these procedures. Dr. Williams was clearly afforded notice and an opportunity to be heard at four levels of review during the peer-review process, and his remaining arguments, which merely challenge alleged inconsistencies in the trial testimony, are matters outside the province of this court. *See Jones*, 2017 Ark. App. 23, at 6, 511 S.W.3d at 873. Therefore, we uphold the circuit court's ruling that the claim was without merit.

## III. *Conclusion*

We affirm the order granting summary judgment to Dr. Hearnsberger because Dr. Williams fails to offer convincing argument or citation to legal authority warranting reversal. We also affirm the summary judgments in favor of the Baptist Health appellees on the six constitutional claims, the defamation claim, the retaliation claim, and the judgment in favor of Baptist Health on the claim alleging that it failed to follow its own bylaws during the peer-review process. We reverse the judgment in favor of the Baptist Health appellees on the discrimination and tortious-interference claims, however, because we hold that the circuit court abused its discretion when it denied Dr. Williams's motions to compel discovery of peer-review records regarding other physicians at Baptist Health. Accordingly, we remand the case to the circuit court for further proceedings consistent with this opinion.

Affirmed in part; reversed and remanded in part.

VIRDEN AND SWITZER, JJ., agree.

*Andre K. Valley*; and *George W. McGriff & Associates*, by: *George W. McGriff, pro hac vice*, for appellant.

*Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C.*, by: *Byron Freeland* and *Megan D. Hargraves*, for separate appellee Baptist Health d/b/a/ Baptist Health Medical Center.

*Anderson, Murphy & Hopkins, L.L.P.*, by: *Jason J. Campbell*, for separate appellee John E. Hearnsberger, M.D.