SLIP OPINION

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV–16–378

| | |
|---|---|
| BARRY J. JONES D/B/A BORDERLINE FARMS | Opinion Delivered: January 18, 2017 |
| APPELLANT | APPEAL FROM THE LEE COUNTY CIRCUIT COURT [NO. 39CV-12-56] |
| V. | |
| | HONORABLE RICHARD LEE PROCTOR, JUDGE |
| JOHN B. DOZIER LAND TRUST, JOHN B. DOZIER, TRUSTEE | |
| APPELLEE | REVERSED AND REMANDED |

## KENNETH S. HIXSON, Judge

Appellant Barry Jones (Jones) d/b/a Borderline Farms appeals from the Lee County Circuit Court's judgment awarding appellee, the John B. Dozier Land Trust (the Dozier Trust), John B. Dozier (Dozier), Trustee, damages for breach of contract. On appeal, appellant contends that (1) the repair estimate was inadmissible hearsay; (2) the allegation that appellant caused the oil spill was based on speculation and conjecture; and (3) another entity, Dozier Farms, Inc. (Dozier Farms), was a necessary party. We reverse and remand.

Dozier was married to Cathy Dozier. Cathy has a son from a previous marriage, Jones. Hence, Jones was Dozier's stepson. The Dozier Trust owned approximately 1100 acres of farmland in Lee County. Dozier was the sole trustee of the trust. Dozier, as trustee, leased a portion of the farmland to his stepson, Jones, beginning in 2007.[1] The leased

---

[1]The Dozier Trust and Jones had a written lease agreement for 2007, 2008, and 2009. It was disputed whether the parties entered into a written lease agreement for 2010. The

SLIP OPINION

premises contained a shop building. In January 2011, Dozier and Cathy Dozier separated in contemplation of divorce. At some point, Dozier decided that he did not want to continue the farming arrangement with his soon-to-be ex-stepson, Jones. On January 24, 2011, Dozier's attorney sent Jones a letter terminating Jones's lease of the farmland after the 2011 crop season. The letter advised Jones that he could harvest the current crop but warned Jones not to plant any crops in the fall of 2011.

A few months after Jones had vacated the property,[2] Dozier inspected it and discovered, among other things, alleged damage to the irrigation system and the shop-building door, and a significant oil spill on the ground just outside the shop building. The Dozier Trust filed an action for breach of contract, negligence, intentional tort, and unjust enrichment against Jones. Generally, the Dozier Trust alleged that Jones was responsible for damages for failing to pay 20 percent of the proceeds from a separate lawsuit, failing to properly maintain irrigation equipment, failing to keep the shop clean by permitting an oil spill, failing to cut the cotton stalks at the end of the harvest, causing damage to an overhead door on the shop, and causing damage to the irrigation system.[3] Jones answered and denied the allegations and alternatively alleged that he was entitled to a setoff in the amount of

---

parties agreed there was not a written lease for 2011. However, Jones did farm the trust land during 2010 and 2011.

[2]The record does not contain evidence of the date Jones surrendered the leased premises.

[3]The only issue on appeal is the damages relating to the oil spill. We therefore do not include a discussion of the other elements of the alleged damages.

$7,214.79 for amounts that he had paid to Woodruff Electric Cooperative that benefited the trust.

At trial, Dozier testified that he had rented the farmland to his stepson, Jones, and that there were written leases for every year except 2011, which he referred to as Jones's "carryover year." Although he could not locate the signed copy of the 2010 lease, an unsigned copy of the 2010 lease was admitted into evidence without objection. Dozier additionally explained that all of the leases were essentially the same except for specifying alternating fields that Jones could use for planting. Dozier explained that he allowed Jones to continue to farm and harvest his crops in 2011 because Dozier did not think that he had given Jones enough notice to procure land somewhere else in a timely manner. Therefore, Dozier agreed that Jones had a "holdover lease" in 2011.

One of the lease provisions required Jones to keep the shop clean and organized to the best of his ability. After Jones had vacated the property, Dozier observed burnt motor oil poured or spilled all over the ground around the shop. Photographs of the area around the shop containing the oil spill were admitted into evidence.

Dozier testified that a thousand-gallon tank was located outside the shop building for proper disposal of any oil "because [the Environmental Protection Agency] was cracking down on spilling oil on the ground, and we had a company that would come pump it out and take it off." Therefore, he explained, there should not have been any buckets of oil near the tank or oil poured or spilled on the ground. Dozier further testified that no other farmer used that shop and that to his knowledge "there's absolutely no other person that could have done this." At the time of the trial in September 2015, Dozier stated that he

had not had the oil spill cleaned up but had procured an estimate from The Southern Company of North Little Rock (The Southern Company) in the amount of $28,200 for the cleanup costs. The Dozier Trust attempted to introduce the estimate into evidence to prove damages. However, Jones objected to the estimate being admitted into evidence on the basis that it was hearsay. The Dozier Trust responded that the estimate met the business-record exception and that it had attached an affidavit from the company that prepared the estimate. At that time, the trial court stated that the document "will be received for the limited purposes of putting it in the record, but I'll have to make a decision on that."

Gregory Williams testified that he had been an employee of Dozier and had been working on the farmland for about thirty-one years. Williams had been working for Jones until he quit in February of 2011. Williams also testified that he observed the oil spill in October 2011 and explained that the spill had not been there when he quit in February 2011. Therefore, he explained that the oil spill had to have occurred between the time he left in February 2011 and October of 2011. Williams further testified that no other farmer had access to or was using the oil tank at the shop. He additionally indicated that Jones had told him that "he was beating [Dozier] at every move."

Jones testified and denied that he had spilled the oil and testified that he did not know who was responsible for the oil spill. He additionally denied signing the 2010 lease agreement but admitted that he had entered into lease agreements from 2007 through 2009. Although Jones denied making a statement to Williams that he was beating Dozier at every move, Jones admitted that he probably threatened Dozier in response to Dozier's threats toward him. Jones testified that he did keep the shop clean but also stated that Williams,

his farm manager, was responsible for cleaning the shop when he was an employee. Jones did not testify as to when he specifically vacated the farmland, though he maintained that he "had [the farmland] . . . until the end of 2011." Finally, he testified that the oil spill was not present when he left.

At the conclusion of the trial, the trial court orally ruled from the bench, which was subsequently memorialized in a judgment entered on November 2, 2015. The trial court specifically found that the Dozier Trust had a valid lease with Jones and that the lease agreement had been breached. The trial court further found that Jones was responsible for damages and awarded the Dozier Trust $28,200 for the oil spill, $1,885 for the shop overhead door, and $2,500 in attorney's fees. However, the trial court found that Jones was entitled to a setoff in the amount of $7,214.79 for payments made to Woodruff Electric Cooperative.

After the trial court orally stated its ruling from the bench, the following colloquy ensued:

| | |
|---|---|
| [JONES]: | Your honor, one thing we did have, and we objected to this twenty something thousand dollar – twenty something thousand dollar or thirty thousand dollar oil spill, and we told him we could get it done cheaper. I mean you still win, but I think we can get it done – |
| THE COURT: | I didn't see any evidence of anything cheaper. Now, here's what – I've looked at that. I have these things, with the EPA problems that they have with something like that, I know it's a horribly expensive thing, and I don't say that I agree with that, but *I received that, and we got it into evidence*, and that's what it was, and that's what the award – |
| [JONES]: | Your honor, I do respect you, but we objected to it coming in. |



(Emphasis added.) Judgment was entered in favor of the Dozier Trust, and this appeal followed by Jones.

## I. *Standard of Review*

In order to prove a breach-of-contract claim, one must prove the existence of an agreement, breach of the agreement, and resulting damages. *Schwyhart v. J.B. Hunt, LLC*, 2014 Ark. App. 324, 436 S.W.3d 173. Our standard of review following a bench trial is whether the trial court's findings are clearly erroneous or clearly against the preponderance of the evidence. *Bohannon v. Robinson*, 2014 Ark. 458, 447 S.W.3d 585. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Id.* Disputed facts and determinations of the credibility of witnesses are within the province of the fact-finder. *Id.* Furthermore, in a bench trial, a party who does not challenge the sufficiency of the evidence at trial does not waive the right to do so on appeal. *Id.*

## II. *The Repair Estimate*

Appellant first argues on appeal that the repair estimate was inadmissible hearsay and should have been excluded. Appellant argues that appellee failed to present testimony establishing that the seven requirements under the business-record exception to hearsay had been met and that the document was trustworthy. He further argues that because the repair estimate was the only basis for the amount of the trial court's award of damages, which should have been excluded, the trial court's judgment should be reversed as to the damages relating to the oil spill cleanup. We agree.

Before turning to the merits, appellee alleges that this point on appeal is not preserved for our review. We disagree. Appellant timely objected at trial to the introduction of the repair estimate from The Southern Company on the basis of hearsay. Appellee offered an affidavit from The Southern Company in an attempt to qualify the estimate as a business-record exception to the hearsay rule. The trial court stated that, at the time that the exhibit was introduced, it was received for the limited purpose of putting it in the record. However, the trial court later stated that it "received that" and "got it into evidence." While it is unclear what the trial court meant when it previously stated that it received the estimate "for the limited purpose of putting it in the record," it is clear that the trial court considered the repair estimate as substantive evidence of damages because it awarded damages in precisely the same amount as the estimate for the oil spill cleanup. Thus, appellant obtained a ruling that the exhibit was admitted into evidence over his hearsay objection, and the issue was preserved for our review.

Turning to the merits of the admissibility of the estimate, we note that the trial court has wide discretion in determining the qualification of witnesses and the admissibility of evidence. *Beard v. Ford Motor Credit Co.*, 41 Ark. App. 174, 850 S.W.2d 23 (1993). One who offers evidence has the burden of showing its admissibility, and we will not reverse the trial court's decision to permit introduction of the evidence absent an abuse of the trial court's discretion. *Paine v. Walker*, 76 Ark. App. 217, 61 S.W.3d 925 (2001). "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Ark. R. Evid. 801. Clearly, the repair estimate from The Southern Company was hearsay. The appellee introduced the

estimate to prove the truth of the matter asserted therein, namely, the $28,200 in remediation costs. Hence, it was incumbent on the appellee to prove the existence of an appropriate exception to the hearsay rule.

Arkansas Rule of Evidence 803(6) provides that records of a regularly conducted business activity are not excluded from evidence by the hearsay rule. To be admissible under the business-record exception, the offering party must meet seven requirements. *Beard*, *supra*. The evidence must be (1) a record or other compilation, (2) of acts or events, (3) made at or near the time the act or event occurred, (4) by a person with knowledge, or from information transmitted by a person with knowledge, (5) kept in the course of a regularly conducted business, (6) which has a regular practice of recording such information, (7) as shown by the testimony of the custodian or other qualified witness. *Id*. Although there is no prohibition against one company integrating records made by another into its own business records, the party offering the record must still establish by a competent witness that its content is worthy of belief. *Marshall Trucking Co. v. State*, 23 Ark. App. 110, 743 S.W.2d 16 (1988). The mere fact that a document is retained in appellant's files does not supply the required foundation for admission. *Id*. Only those documents meeting the seven requirements and which are also found to be trustworthy are admissible under Rule 803(6). *Id*.

Here, appellee failed to present any admissible testimony whatsoever from the custodian or other qualified witness of the record as to whether the business-record requirements were met. Among other things, there was no admissible evidence that the estimate was made at or near the time of the occurrence, that it was made by a person with

knowledge, and whether it was, in fact, a document kept in the regular course of The Southern Company's business. The record is completely void of the safeguards required by the business-record-exception rules. Although appellee attached an affidavit from an employee of the company that made the repair estimate, the affidavit itself was inadmissible hearsay.[4] *See Greenlee v. State*, 318 Ark. 191, 884 S.W.2d 947 (1994). Therefore, because appellee failed to establish that the repair estimate met the seven requirements and that it was trustworthy to be admissible under Rule 803(6), we must conclude that the trial court abused its discretion in admitting the repair estimate into evidence.

Appellant contends in his brief on appeal that the repair estimate was the only evidence of damages "as to the cost of the cleanup" and, therefore, the trial court's decision should be reversed because the trial court's reliance on that evidence was in error. While we agree that the trial court erred, we find that the case should be remanded instead of dismissed. *Little Rock Newspapers, Inc. v. Dodrill*, 281 Ark. 25, 660 S.W.2d 933 (1983), and its progeny discuss the issue of whether a case should be dismissed or remanded when or if there is an insufficiency of evidence. Our supreme court in *Dodrill* stated the following:

> [W]e find it appropriate in this situation to remand. We have followed this practice in other situations where we have reversed because of insufficiency of the evidence. We have stated:
>
> > . . . Our ordinary procedure in reversing judgments in law cases is to remand for another trial, rather than dismiss the cause of action. It is only where it clearly appears that there can be no recovery that we consider it proper to dismiss the cause. . . . The evidence might well have been much more developed than it was. This Court has held even where a judgment based on

---

[4]Although Arkansas Code Annotated section 16-46-108 (Repl. 1999) permits certain business records to be admitted based on affidavit if certain conditions are met, neither party raised this statute as a basis for the admission before the trial court nor suggests that this section is applicable here.

a jury verdict is reversed for insufficiency of the evidence to support it, there may be circumstances which justify remanding the case for new trial. *Hayes Bros. Floor. Co. v. Carter, Adm'x*, 240 Ark. 522, 525, 401 S.W.2d 6 (1966).

In *St. L. S.W. Ry. Co. v. Clemons, Etc.*, 242 Ark. 707, 415 S.W.2d 332 (1967) we said:

> The general rule is to remand common law cases for new trial. Only exceptional reasons justify a dismissal. One of the exceptions is an affirmative showing that there can be no recovery. *Pennington v. Underwood*, 56 Ark. 53, 19 S.W. 108 (1892). There it was said that when a trial record discloses 'a simple failure of proof, justice would demand that we remand the cause and allow plaintiff an opportunity to supply the defect.'

*See also Home Ins. Co. v. Harwell*, 263 Ark. 884, 568 S.W.2d 17 (1978); *Southwestern Underwriters Ins. v. Miller*, 254 Ark. 387, 493 S.W.2d 432 (1973). And we have held this procedure applicable even when no proof was offered on an issue, and where it was demanded by simple justice or where it was not impossible that the deficiency in proof could be supplied. *Follett v. Jones*, 252 Ark. 950, 481 S.W.2d 713 (1972); *South. Farm Bur. Cas. Ins. v. Gottsponer*, 245 Ark. 735, 434 S.W.2d 280 (1968).

*Dodrill*, 281 Ark. at 32–33, 660 S.W.2d at 937–38.

Here, although we hold that the introduction of the repair estimate was error, appellee still provided evidence through testimony at trial and through the admission of photographs that there was damage done by the oil spill. Thus, as in *Dodrill*, we cannot say that the record affirmatively shows that there could be no recovery, and we must reverse and remand for a new trial. *Id.*; *Spring Creek Living Ctr. v. Sarrett*, 319 Ark. 259, 890 S.W.2d 598 (1995); *Womack v. First State Bank of Calico Rock*, 21 Ark. App. 33, 728 S.W.2d 194 (1987). Because we remand for a new trial on other grounds, we do not address appellant's remaining arguments on appeal. *Harp v. Sec. Credit Servs., LLC*, 2013 Ark. App. 202.

Reversed and remanded.

GRUBER, C.J., and VIRDEN, J., agree.

*Taylor & Taylor Law Firm, P.A.*, by: *Andrew C. Taylor* and *Tasha C. Taylor*, for appellant.

*Hillburn, Calhoon, Harper Pruniski & Calhoun, Ltd.*, by: *Sam Hillburn* and *Tetiana Fayman*, for appellee.