Cite as 2023 Ark. 146

# SUPREME COURT OF ARKANSAS

No. CV–21–417

|  |  |
|---|---|
| | **Opinion Delivered:** October 12, 2023 |
| REBECCA NICHOLS<br><br>APPELLANT<br><br>V.<br><br>JAMES SWINDOLL AND CHUCK GIBSON<br><br>APPELLEES | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FIFTH DIVISION<br>[NO. 60CV-21-1321]<br><br>HONORABLE WENDELL GRIFFEN, JUDGE<br><br><u>SUBSTITUTED OPINION UPON GRANT OF PETITION FOR REHEARING; REVERSED AND REMANDED</u>. |

**SHAWN A. WOMACK, Associate Justice**

Rebecca Nichols appeals the circuit court's dismissal of her legal-malpractice complaint against her attorneys, James Swindoll and Chuck Gibson. We granted review from the court of appeals and affirmed. *Nichols v. Swindoll*, 2023 Ark. 97, at 9, 668 S.W.3d 493, 498. Nichols filed a petition for rehearing, which we now grant and issue the following substitute opinion.[1] As in her initial appeal, Nichols argues that the circuit court abused its discretion in granting Swindoll and Gibson's motions to dismiss and finding she failed to plead facts sufficient to toll the running of the statute of limitations based on fraudulent

---

[1]Although the dissent contends that Nichols's petition for rehearing should be denied, this court has previously granted such a request in a strikingly similar situation. *See, e.g.*, *Rogers v. State*, 2018 Ark. 309, 558 S.W.3d 833.

concealment. Because silence amounts to a positive act of fraud when there is a confidential or fiduciary relationship, we now reverse and remand.

I. *Facts*

The pertinent facts were detailed in our original opinion, but we will briefly revisit them here. *Id.*, 2023 Ark. 97, at 1–5, 668 S.W.3d at 494–96.

In November 2014, Rebecca Nichols was involved in a single-vehicle accident. Nichols retained Chuck Gibson and James Swindoll to file a negligence lawsuit against Archer Daniels Midland Corporation and five John Doe defendants in September 2017. When Nichols filed her lawsuit, she was unsure what potential defendants were responsible for the alleged negligence that led to the crash, which necessitated the inclusion of several John Doe defendants. The three-year statute of limitations for her negligence claim ran on November 23, 2017.

Gibson and Swindoll, however, failed to properly serve the defendants within 120 days or obtain an extension from the circuit court as required by the Arkansas Rules of Civil Procedure. In April 2019, Gibson and Swindoll filed an amended complaint to include the now-known defendants, Precoat Metals and B & L Trucking Services. B & L filed a successful motion to dismiss because the statute of limitations had run, and Precoat filed a successful motion to dismiss because Gibson and Swindoll failed to serve Precoat with a copy of the complaint.

When Precoat filed its motion to dismiss on March 13, 2020, Swindoll and Gibson informed Nichols they had committed malpractice in January 2018 by serving a deficient summons but counseled her that the judge may nevertheless allow her to continue to

2

prosecute her lawsuit they had "technically" served Precoat. Nichols filed a legal malpractice lawsuit against Swindoll and Gibson on February 22, 2021, and alleged they maintained the negligence lawsuit by continually filing futile motions so the three-year statute of limitations for legal malpractice could run—i.e., they fraudulently concealed their malpractice by keeping the appearance that her lawsuit was alive.

After a series of hearings and motions, the circuit court dismissed Nichols's legal malpractice lawsuit against Swindoll and Gibson, finding that Nichols failed to plead sufficient facts in her amended complaint to allege fraudulent concealment. As a result, the circuit court ruled that her claim against Gibson and Swindoll was untimely.

## II. *Discussion*

Generally, when there is a confidential or fiduciary relationship, there is a duty to disclose malpractice. *See Howard v. Nw. Ark. Surgical Clinic, P.A.*, 324 Ark. 375, 383, 921 S.W.2d 596, 600 (1996) (explaining that a physician "had an obvious professional, positive duty to speak if he knew he had negligently left a foreign object in his patient[,]" and his failure to do so amounted to fraudulent concealment). Until this point, we have willingly saddled other professions with this duty while curiously shielding attorneys from it. *See id.*; *see also* Ark. Const. amend. 28 (giving this court the authority to regulate attorneys). Because silence amounts to a positive act of fraud when there is a confidential or fiduciary relationship, we hold that Rebecca Nichols pled sufficient facts to establish fraudulent concealment. *Ward v. Worthen Bank & Tr. Co.*, 284 Ark. 355, 359, 681 S.W.2d 365, 368 (1984) (noting that "[f]ailure to speak is the equivalent of fraudulent concealment only in

3

circumstances involving a confidential relationship when a duty to speak rises where one party knows another is relying on misinformation to his detriment").

"A fiduciary relationship exists between attorney and client, and the confidence which the relationship begets between the parties makes it necessary for the attorney to act in utmost good faith." *Allen v. Allison*, 356 Ark. 403, 415, 155 S.W.3d 682, 691 (2004). An attorney "must not only not misrepresent any fact to his client, but there must be an entire absence of concealment or suppression of any facts within his knowledge which might influence the client, and the burden of establishing the fairness of the transaction is upon the attorney." *Norfleet v. Stewart*, 180 Ark. 161, 168, 20 S.W.2d 868, 870 (1929).

When such a relationship exists, the duty to speak arises. *See Ward*, 284 Ark. at 359, 681 S.W.2d at 368. The Restatement (Third) of the Law Governing Lawyers succinctly explains why.

> A lawyer must keep a client reasonably informed about the status of a matter entrusted to the lawyer, including the progress, prospects, problems, and costs of the representation. . . . If the lawyer's conduct of the matter gives the client a substantial malpractice claim against the lawyer, the lawyer must disclose that to the client. For example, a lawyer who fails to file suit for a client within the limitations period must so inform the client, pointing out the possibility of a malpractice suit and the resulting conflict of interest that may require the lawyer to withdraw.

Section 20 cmt. c (2000 & Supp. 2021). We have adopted rules of professional conduct that try to guard against the forewarned deception, namely that a "[l]awyer may not withhold information to serve the lawyer's own interest or convenience or the interests or convenience of another person." Ark. R. Prof'l Conduct 1.4 cmt. 7. A lawyer seemingly

4

maintaining a futile lawsuit to run out the statute of limitations on a legal–malpractice claim is a perfect example of this.

The relevant portions of Nichols's amended complaint allege the following facts to support her allegations that Swindoll and Gibson fraudulently concealed their malpractice: Swindoll and Gibson:

> c. purposefully and fraudulently and maliciously on March 22, 2018, and afterwards failed to advise Rebecca that by them failing to request an extension on or before March, 2018, to serve the John Doe defendants, Rebecca's further litigation efforts were useless; had Defendants acted with a reasonable degree of care they would have immediately after March 22, 2018, informed Rebecca of their malpractice to put her on notice she needed to sue them;
>
> d. purposefully and fraudulently and maliciously attempted to hide their malpractice from Rebecca because they incorrectly believed that she could not sue them for malpractice after November 23, 2020; had defendants acted with a reasonable degree of care they would have immediately after March 22, 2018, informed Rebecca of their malpractice to put her on notice she needed to sue them;
>
> e. purposefully and fraudulently and maliciously continued to fruitlessly litigate Rebecca's lawsuit against the John Doe defendants after March 22, 2018, in order to hide their malpractice from Rebecca long enough so she would be barred by the three–year statute of limitations from suing them; had defendants acted with a reasonable degree of care they would have immediately after March 22, 2018, informed Rebecca of their malpractice to put her on notice she needed to sue them;
>
> f. purposefully and fraudulently and maliciously waited until after March 13, 2020, to inform Rebecca they had technically committed malpractice and fraudulently advised her that the judge would forgive the technicality and allow her to continue her lawsuit;
>
> g. willfully and maliciously disregarded their fiduciary duty to Rebecca;
>
> h. were aware their above actions in representing Rebecca would naturally and probably result in damage to her in excess of $75,000 and yet continued

5

with malice or in reckless disregard of the consequences from which malice can be inferred.

At this stage, we presume these well-pled facts to be true. *Henson v. Cradduck*, 2020 Ark. 24, at 4, 593 S.W.3d 10, 14. By doing so, neither we nor the circuit court can properly conclude that Nichols failed to allege facts to support a claim of fraudulent concealment when her attorneys had a duty to inform her of their malpractice when they learned of it. *See Norfleet*, 180 Ark. at 168, 20 S.W.2d at 870; *see also* Restatement (Third) of the Law Governing Lawyers § 20 cmt. c; *see also* Ark. R. Prof'l Conduct 1.4 cmt. 7. Because attorneys owe a fiduciary duty to their clients, "a client is not required to maintain a double layer of lawyers to ensure that the fiduciary responsibilities of the primary lawyer are being honored. (And is a third lawyer needed to ensure the second lawyer properly monitors the first one? And so on.") *Nichols v. Swindoll*, 2022 Ark. App. 399, at 8 (Harrison, C.J., dissenting).

### III. *Conclusion*

We express no opinion on the merits of Nichols's malpractice claim. But because silence amounts to a positive act of fraud when there is a confidential or fiduciary relationship (as there is here between attorneys and their clients), Nichols's complaint pled sufficient facts to establish fraudulent concealment and survive a motion to dismiss.

Reversed and remanded.

KEMP, C.J., and BAKER and HUDSON, JJ., dissent.

**KAREN R. BAKER, Justice, dissenting.** Because I cannot agree with the majority's decision to grant Nichols's petition for rehearing, I dissent. I would deny Nichols's petition,

6

and I would affirm for the reasons stated in *Nichols v. Swindoll*, 2023 Ark. 97, 668 S.W.3d 493 (*Nichols I*). Arkansas Supreme Court Rule 2-3, which sets forth the rules regarding a petition for rehearing, provides:

> (g) Entire case not to be reargued. The petition for rehearing should be used to call attention to specific errors of law or fact which the opinion is thought to contain. Counsel are expected to argue the case fully in their original briefs, and the brief on rehearing is not intended to afford an opportunity for a mere repetition on the argument already considered by the Court.

There has been no change in either the law or the facts since we issued *Nichols I*. Instead of calling "attention to specific errors of law or fact" as required by Rule 2-3, Nichols seeks rehearing based on the authorities cited by the *Nichols I* dissent. Further, in her petition for rehearing, Nichols admits that her duty-to-speak argument was presented and rejected by this court. A petition for rehearing is not an opportunity to repeat arguments already considered and rejected by this court. Therefore, the decision to grant rehearing in this case is wholly inappropriate.

As explained in *Nichols I*, the circuit court did not abuse its discretion in finding that Nichols failed to sufficiently plead fraudulent concealment and therefore did not toll the running of the statute of limitations. Therefore, the circuit court correctly dismissed Nichols's untimely filed malpractice complaint. Without acknowledging our more recent, directly-on-point precedent analyzing fraudulent concealment in the context of an attorney-client relationship, the majority declares in sweeping fashion that "silence amounts to a positive act of fraud when there is a confidential or fiduciary relationship." In order to support this new standard, the majority reaches back decades to rely on cases that do not involve attorney-client relationships. *See Howard v. Nw. Ark. Surgical Clinic*, P.A., 324 Ark.

7

375, 921 S.W.2d 596 (1996) (physician had a duty to speak if he knew he left a foreign object in his patient); *Ward v. Worthen Bank & Tr. Co.*, 284 Ark. 355, 681 S.W.2d 365 (1984) (in a case involving a banking loan, this court explained that in a confidential relationship, failure to speak amounts to fraudulent concealment when one party knows the other is relying on misinformation to his detriment). While there is clearly a duty to speak in certain situations—when a doctor leaves a foreign object in his patient or when, in a confidential relationship, a party knows the other is relying on misinformation to his detriment—here, the majority conveniently ignores precedent on all fours with the case before us. *See Delanno, Inc. v. Peace*, 366 Ark. 542, 237 S.W.3d 81 (2006). In *Delanno*, we held that to demonstrate fraudulent concealment, "not only must there be fraud, but the fraud must be furtively planned and secretly executed so as to keep the fraud concealed." 366 Ark. 542, 545, 237 S.W.3d 81, 84 (2006). In that case, the attorneys were responsible for obtaining a tax-clearance letter from the State, which would absolve Delanno from any tax liability for a purchase that Delanno had made. The attorney assured Delanno that the tax-clearance letter had been secured and that Delanno would be relieved of any tax liability that would have otherwise resulted from the purchase. Months later, the State notified Delanno that he was liable for taxes owed on the purchase. Delanno's wife contacted the attorneys concerning the tax issue and was advised that the attorneys had a tax-clearance letter on file, that Delanno owed no taxes resulting from the purchase, and that the attorneys would take care of the matter. Three years later, Delanno was again notified by the State that he owed taxes as a result of his purchase. After a series of exchanges between Delanno and his attorneys, it became apparent that the attorneys had filed the tax-clearance letter

8

with the wrong tax-identification number and that, as a result of this oversight, Delanno owed the taxes as indicated by the State. Delanno filed a malpractice suit against his attorneys. In response, the attorneys moved for summary judgment, claiming that the action was barred by the statute of limitations. The circuit court granted the motion for summary judgment, and Delanno appealed. The issue on appeal was whether the circuit court erred in granting summary judgment to the attorneys on the ground that the statute of limitations barred the action when Delanno pleaded fraudulent concealment. We affirmed the circuit court's order granting summary judgment in favor of the attorneys, holding that Delanno failed to show that the attorneys' inaccurate statements were furtively planned and executed, or concealed.

In my view, *Delanno* is dispositive of the present case. A close review of Nichols's complaint demonstrates that she failed to allege "something so furtively planned and secretly executed as to keep the plaintiff's cause of action concealed, or perpetrated in a way that conceals itself." *Delanno*, 366 Ark. at 545, 237 S.W.3d at 84 (citing *Shelton v. Fiser*, 340 Ark. 89, 96, 8 S.W.3d 557, 562 (2000)). Because Nichols did not plead an act of fraud that was furtively planned and secretly executed by Attorneys Swindoll and Gibson, Nichols failed to sufficiently plead fraudulent concealment. Absent fraudulent concealment, Nichols's February 2021 malpractice complaint was untimely filed. Accordingly, I would hold that the circuit court did not abuse its discretion in dismissing her untimely filed malpractice complaint.

In light of today's misguided majority opinion, I caution attorneys to maintain records until death. Previously, a malpractice claim alleging fraudulent concealment

9

required the client to pinpoint a furtively planned and secretly executed act of fraud. However, now, the client is no longer required to plead that the attorney engaged in a planned secretive act of fraud, or that the attorney *did* anything at all. Stated differently, a fraudulent-concealment claim can be brought at any time, with the bare allegation of attorney silence, and will satisfy our pleading requirements. In *Chapman v. Alexander*, 307 Ark. 87, 817 S.W.2d 425 (1991), we underscored the problems with forcing an attorney to defend an alleged act of malpractice that occurred several years prior. We explained that "[t]he problem with the delay is that his or her records or witnesses may no longer be available. For example, in the oral argument of this case, it was developed that under the 'discovery rule,' an attorney could be forced to defend the validity of a mortgage 25 to 30 years after the preparation of the instrument, long after his records and witnesses are no longer available." *Id*. at 88–89, 817 S.W.2d at 426. Unfortunately, as to any previously discarded records, the majority's retroactive application of this new standard means that attorneys will now be unable to defend themselves against meritless claims of fraudulent concealment.

Again, I emphasize that there has been no change in the law since we issued *Nichols I*, and because Nichols failed to point out specific errors of law or fact in *Nichols I*, it was improper to grant the petition for rehearing. Accordingly, I dissent.

KEMP, C.J., and HUDSON, J., join.

*Robert S. Tschiemer*, for appellant.

*Barber Law Firm, PLLC*, by: *G. Spence Fricke* and *Adam D. Franks*, for appellee James Swindoll.

10