Cite as 2026 Ark. 42

# SUPREME COURT OF ARKANSAS

**No.** CV-25-562

| | | |
|---|---|---|
| | | **Opinion Delivered:** March 5, 2026 |
| REBECCA NICHOLS | APPELLANT | |
| V. | | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FIFTH DIVISION |
| JAMES SWINDOLL AND CHUCK GIBSON | | [NO. 60CV-21-1321] |
| | APPELLEES | HONORABLE LATONYA AUSTIN-HONORABLE, JUDGE |
| | | AFFIRMED. |

**COURTNEY RAE HUDSON, Associate Justice**

In this second appeal, appellant Rebecca Nichols appeals from the Pulaski County Circuit Court's order granting summary judgment to appellees James Swindoll and Chuck Gibson and dismissing Nichols's legal–malpractice complaint.[1] For reversal, Nichols argues that the circuit court (1) erred by awarding summary judgment to appellees; (2) abused its discretion by granting Swindoll's motion in limine and ruling that her out-of-court conversation with a co-worker about B & L Trucking LLC (B & L) was inadmissible hearsay; (3) abused its discretion by granting Swindoll's motion in limine prohibiting opinion testimony as to the cause of her accident; (4) abused its discretion by granting

---

[1]Gibson has not filed a brief or otherwise participated in this appeal.

Swindoll's motion in limine prohibiting evidence of some of her medical expenses; and (5) abused its discretion by denying her motion to recuse. We affirm.

On November 22, 2014, Nichols, who was employed by Hog Wild Trucking, Inc. (Hog Wild), was dispatched to Jonesboro, Arkansas, to pick up a sealed trailer and transport it to Archer Daniels Midland Corporation's (ADM's) drop lot in Arkansas City, Kansas. After hooking up the trailer in Jonesboro, Nichols drove a short while before stopping to rest. The next day, on November 23, Nichols stopped by her home in Midway, Arkansas, to take a shower and do other chores. After she hooked the trailer back up and resumed her journey, Nichols was severely injured when the tractor-trailer overturned as she conducted a "buttonhook" turn—by first turning the truck to the right and then sharply to the left— onto Highway 5 North from the truck stop. Nichols had no memory of the accident but believed that the cargo, consisting of six steel coils, had not been properly secured and became dislodged, causing the tractor-trailer to fishtail and then overturn.[2]

In August 2017, Nichols retained appellees to represent her in a lawsuit against those responsible for the alleged negligence that led to the crash. The parties were aware that the three-year statute of limitations for the claim would expire on November 23, 2017. On September 21, 2017, appellees filed a complaint on behalf of Nichols against ADM and several John Doe defendants alleging that they had negligently loaded and/or secured the cargo. ADM was subsequently dismissed from the case, and appellees failed to serve any

---

[2]Nichols was convicted of careless and prohibited driving in the Mountain Home District Court. She appealed to the circuit court, which affirmed her conviction. The circuit court found no reasonable basis to conclude that the accident had been caused by the truck's load shifting, as Nichols had claimed.

other defendants within 120 days or request an extension of service from the circuit court as required by the Arkansas Rules of Civil Procedure.

Appellees then subpoenaed Great West Casualty Company, the insurer of the trailer, and received copies of checks showing that B & L was the insured and had received insurance proceeds following the accident. Appellees filed an amended and substituted complaint on behalf of Nichols on August 27, 2018, naming B & L as one of the John Doe defendants and claiming that it was the owner and loader of the shipment and that it had failed to use ordinary care to ensure that the steel coils were secured in a safe manner. Through discovery from B & L, appellees received a Landstar Load Confirmation document (Landstar document) revealing that Precoat Metals (Precoat) was the shipper of the steel coils. Appellees then filed a second amended and substituted complaint on April 17, 2019, substituting Precoat as one of the other John Doe defendants.

B & L asserted as an affirmative defense that the statute of limitations had run, and it was dismissed without prejudice in December 2019 at the request of appellees. In April 2020, Precoat filed a motion to dismiss based on improper service, alleging that it had been served with the summons but not the complaint, and based on the expiration of the statute of limitations. The circuit court granted Precoat's motion and dismissed Nichols's suit with prejudice on January 21, 2021.

Nichols filed a malpractice complaint against appellees on February 22, 2021, and an amended complaint on April 7, 2021. Nichols alleged that appellees were aware at all times that her complaint would be barred by the statute of limitations if the defendants were not properly served within 120 days or if an extension was not requested within that time.

3

Nichols claimed that appellees fraudulently concealed their malpractice, however, and that they continued to pursue futile motions so that the three-year statute of limitations for legal malpractice would expire. The circuit court granted appellees' motion to dismiss the malpractice suit on June 7, 2021, finding that it was time-barred and that Nichols had failed to plead sufficient facts of fraudulent concealment to toll the running of the statute of limitations. Nichols appealed, and this court reversed and remanded. *Nichols v. Swindoll*, 2023 Ark. 146 (substituted opinion upon grant of rehearing). While we expressed no opinion on the merits of Nichols's malpractice claim, we held that she had pled sufficient facts to establish fraudulent concealment to survive a motion to dismiss. *Id.*

After the case was remanded, the parties engaged in discovery. The circuit court entered a scheduling order on January 31, 2024, setting the jury trial for October 1–4, 2024, and stating that all discovery must be completed no later than sixty days before trial. Nichols filed an amendment to her first amended complaint (second amended complaint) on June 9, 2024. She claimed that Precoat was the manufacturer, shipper, and loader of the six metal coils; that the "live load carrier" who observed Precoat loading the coils into the trailer before it was sealed was B & L; that B & L's live-load driver picked up the unsecured load from Precoat in Blytheville, Arkansas, in a B & L trailer that was not designed or legally allowed to transport the coils; that the B & L driver watched Precoat illegally load the B & L trailer and seal it; and that the B & L driver delivered the sealed trailer to Hog Wild's terminal in Jonesboro so that the Hog Wild relay driver could attach it and transport it to ADM's drop lot. Nichols further asserted that B & L advertised that it shipped sheet metal

4

coils; that it was a regular carrier for Precoat; and that the owner of B & L, Richard Long, was also the owner of Hog Wild, the relay carrier.

Nichols claimed that she was in no way negligent or at fault for the wreck and that as a direct and proximate result of the negligence of Precoat's and B & L's improper loading of the cargo, she sustained medical expenses in excess of $75,000, she will continue to incur such expenses in the future, and she has suffered lost wages and earning capacity in excess of $75,000. Although the bill of lading was removed from her truck, she alleged that she had obtained the name of the insurance company that insured the trailer and the name of the salvage company that obtained the trailer from the insurance company. In addition, Nichols stated that another Hog Wild employee had told her that it was B & L that live loaded the trailer.

When she met with Swindoll in August 2017, Nichols alleged that she presented him with a folder containing all of the evidence that she had accumulated concerning her wreck, including the name and number of a witness to the accident, the accident report, her medical records, the name and address of B & L's owner and its insurance company, the name and address of Hog Wild's owners and its insurance company, and the salvage company. She claimed that she told Swindoll that B & L was the live-load carrier, that Richard and Judy Long were the owners of Hog Wild, that B & L and Hog Wild were related, and that B & L was the umbrella company over Hog Wild. She stated that she was not aware of the name of the shipper, but she told Swindoll he could use the information she had collected to obtain the bill of lading or other documentation to determine the identity of the shipper and to prove that B & L was the live loader.

5

According to Nichols, appellees were negligent in their representation of her and committed a breach of fiduciary duty by failing to timely and properly investigate the names of the John Doe defendants. She claimed that, had appellees acted with a reasonable degree of care, they would have uncovered the names of B & L and Precoat in time to amend her complaint and either serve it on those defendants or request an extension of time to serve them. Nichols alleged that as a proximate result of appellees' negligence and breach of fiduciary duty, she was precluded from asserting her tort cause of action against Precoat and B & L and collecting a judgment against either or both of those defendants in excess of $75,000. Nichols therefore requested damages from appellees in an amount exceeding $75,000 and punitive damages of at least $1 million.

Appellees answered and denied all material allegations in Nichols's second amended complaint. They also asserted numerous affirmative defenses and requested a bifurcated trial on the issue of punitive damages. On August 15, 2024, Swindoll filed a motion for summary judgment, which was denied by the circuit court. Swindoll also filed six motions in limine, four of which are pertinent to the issues raised in this appeal. In his first motion in limine, Swindoll requested that the circuit court exclude any reference to the Landstar document referencing Precoat as the shipper of the coils. Swindoll argued that this document was inadmissible hearsay and could not be admitted under the business-records exception because there would be no one present at trial to testify as a custodian or other qualified witness familiar with the manner in which the record was made. Swindoll asserted in his second motion in limine that opinion testimony from Barry Brunstein, Nichols's expert witness on tractor-trailer-accident investigations, and Deborah Barnes, an eyewitness to the

6

wreck, that the load in Nichols's trailer shifted and caused her to lose control should be excluded because neither witness was qualified to give this type of accident reconstruction or causation testimony. In his third motion in limine, Swindoll requested that the circuit court exclude Nichols's anticipated testimony that, during her first meeting with Swindoll, she informed him that a co-worker named Garrett Watson had told her that the live-load driver who picked up the trailer from the shipper and hauled it to Jonesboro worked for B & L. Swindoll claimed that this testimony was an out-of-court statement offered in evidence to prove the truth of the matter asserted and that it was clearly hearsay. Finally, in his fifth motion in limine, Swindoll argued that any medical records, medical bills, or other documents that had not been produced by the circuit court's August 2, 2024 discovery deadline should be excluded.

The circuit court held a hearing on Swindoll's motions in limine on September 24, 2024. At the conclusion of the hearing, the court granted Swindoll's first motion in limine, finding that the Landstar document was inadmissible hearsay. The circuit court also granted Swindoll's second motion in limine and ruled that neither Barry Brunstein nor Deborah Barnes would be allowed to testify whether the load in the trailer that Nichols was hauling shifted, causing her to lose control and wreck the tractor-trailer. The court reserved ruling until trial as to whether Nichols would be allowed to testify as to her opinion on the load shifting. With regard to the third motion in limine, the circuit court granted it in part and denied it in part. The court stated that Nichols would be allowed to testify that during their initial conversation in August 2017, she gave Swindoll the name of someone he could talk to concerning the live loader for her haul. However, the court ruled that Nichols would

7

not be allowed to mention the names of any individuals or entities. The circuit court also reserved ruling on Swindoll's fifth motion in limine seeking to exclude Nichols's medical bills. An order to this effect was entered on December 11.

The circuit court informed the parties at the hearing that the trial scheduled for October 1 would likely be continued because an older case that was "first out" for those dates would be tried instead. On September 26, 2024, Nichols filed a motion requesting that the circuit court schedule a new trial date as soon as possible or, in the alternative, recuse from the case and allow another circuit court judge to hear it. Nichols filed another motion on October 16 requesting a hearing on these matters as well as a separate discovery issue. She also sent letters to the circuit court on October 30 and 31 requesting a new trial date. The court subsequently rescheduled the trial for May 2025.

On February 4, 2025, Swindoll filed a motion for leave to file a second motion for summary judgment. He argued that, in light of the circuit court's rulings on his motions in limine, which excluded any references at trial to Precoat or B & L, Nichols would be unable to produce any evidence of who was allegedly at fault for the accident and who the proper defendants would have been in her underlying tort suit. Swindoll asserted that without this evidence, Nichols could not prevail.

Following a hearing on April 30, 2025, the circuit court granted Swindoll leave to file his second summary-judgment motion. In his motion and attached brief, Swindoll argued that under Arkansas's "case within a case" procedure, Nichols would have to prove not only that appellees committed malpractice but also that the result in her underlying tort suit would have been different but for that malpractice. Swindoll contended that because

Nichols had no admissible evidence of the alleged proper defendants, she would be unable to create a factual question on the required element of proximate causation in her malpractice case.

In response to the motion, Nichols submitted a sworn affidavit admitting that the contents of the Landstar document could not be referenced at trial but claiming that she was still allowed to testify and present to the jury all the evidence she gave to Swindoll and the evidence that he obtained from B & L's insurance company that proved that B & L was the live-load carrier that committed negligence. Nichols argued that she should not be required to first try her negligence case against B & L in front of the jury before being allowed to prove her malpractice case. She further asserted that the circuit court would have the opportunity at trial to change its rulings on the motions in limine.

On May 12, 2025, Nichols filed another recusal motion and requested an immediate hearing. She summarized the evidence that she believed supported her case against appellees and also listed the actions that she claimed gave the appearance of the circuit court's bias, such as not setting a first-out trial date as she had requested, not rescheduling the trial for a date earlier than May 2025, allowing Swindoll to file a second motion for summary judgment, and ruling that she was not allowed to testify about what she had showed and told Swindoll about B & L. Nichols also filed a motion on May 19 to re-open the pleadings so she could file a motion for summary judgment.

The circuit court entered an order on June 13, 2025, granting Swindoll's fifth motion in limine and ruling that no medical records or bills submitted by Nichols later than thirty days before the previously scheduled trial on October 1, 2024, would be allowed in

9

evidence. That same day, the court also entered an order granting Swindoll's second motion for summary judgment and dismissing Nichols's complaint. The court found that there was no genuine issue of material fact and that Swindoll was entitled to judgment in his favor as a matter of law.[3] On July 1, the circuit court entered an order denying Nichols's recusal motion. The court stated that adverse rulings alone do not constitute valid grounds for recusal and that Nichols's motion sought to relitigate matters already decided. The court also denied Nichols's request for an evidentiary hearing, finding that one was not warranted under the circumstances. Finally, the circuit court denied Nichols's motion to re-open the pleadings. On July 8, 2025, Nichols filed a timely notice of appeal from the December 11, 2024 order ruling on the motions in limine; the June 13, 2025 order granting summary judgment; and the July 1, 2025 order denying her motion to recuse, for a hearing, and to re-open the pleadings.

Swindoll's motion for summary judgment was based almost entirely on the circuit court's rulings excluding evidence that B & L and Precoat were the respective live-load carrier and shipper of the trailer and cargo at issue; therefore, we first address Nichols's argument that the circuit court erred in granting Swindoll's third motion in limine.[4] A circuit court has broad discretion when deciding evidentiary issues, and we will not reverse

---

[3]On June 30, 2025, Nichols filed with this court an emergency petition for writ of mandamus requesting that we order the circuit court to set aside the summary judgment and allow Nichols a hearing on her recusal motion. We denied the writ petition on July 2, 2025.

[4]Nichols does not challenge on appeal the circuit court's ruling excluding the Landstar document that referenced Precoat. She has therefore abandoned this argument. *E.g.*, *Kitchell v. State*, 2020 Ark. 102, 594 S.W.3d 848.

the court's ruling absent an abuse of discretion. *Bush v. State*, 2024 Ark. 77, 687 S.W.3d 570. An abuse of discretion is a high threshold that does not simply require error in the circuit court's decision but requires that the court act improvidently, thoughtlessly, or without due consideration. *Id.*

In Swindoll's third motion in limine, he sought to exclude Nichols's anticipated testimony that she had told him in their first meeting about the existence of B & L and its role as the live-load carrier. Swindoll argued that, because Nichols conceded during her deposition that she had learned the identity of the live-load driver and that he was employed by B & L from a conversation with her co-worker, Nichol's alleged statement to him should be excluded as inadmissible hearsay. The circuit court agreed that the statement was hearsay and ruled that Nichols could testify that she gave Swindoll the name of someone he could talk to concerning the live-load carrier and "that would be the extent of plaintiff's testimony on this topic, and no names of individuals or entities shall be mentioned by plaintiff." At the April 2025 hearing on Swindoll's motion for leave to file his second summary-judgment motion, the parties discussed the scope of the circuit court's ruling on this issue. Nichols contended that she could still testify that B & L was the live-load carrier based on her research revealing that B & L had insured the trailer and had received checks from the insurance company and from a salvage company following the accident. The court reaffirmed that the terms of its previous ruling prevented Nichols from mentioning B & L's name as the live-load carrier.

Pursuant to Arkansas Rule of Evidence 801, hearsay is a statement, other than one made by the declarant while testifying at the trial or the hearing, offered in evidence to

prove the truth of the matter asserted. Hearsay is not admissible except as provided by law or other rules of evidence. Ark. R. Evid. 802. Nichols argues that she "had the right to submit into evidence all her conversations with Swindoll about B & L and all evidence she provided to him." However, she cites no authority for the proposition that the rules of evidence do not apply in malpractice actions and does not explain how the evidence excluded by the circuit court was admissible under Rule 802. Nichols asserts in her reply brief that all of her conversations with Swindoll and the documents that he was given were admissible under Ark. R. Evid. 803(6) because they were a part of his business records. We have held, however, that parties cannot raise arguments for the first time in a reply brief. *E.g.*, *Graves v. Greene Cnty.*, 2013 Ark. 493, 430 S.W.3d 722. Furthermore, to be admissible under the business-records exception, the evidence must be: (1) a record or other compilation; (2) of acts or events; (3) made at or near the time the act or event occurred; (4) by a person with knowledge, or from information transmitted by a person with knowledge; (5) kept in the course of a regularly conducted business; (6) which has a regular practice of recording such information; (7) all as shown by the testimony of the custodian or other qualified witness. *E.g.*, *Edwards v. Stills*, 335 Ark. 470, 984 S.W.2d 366 (1998). The mere fact that a document was retained in a party's files does not supply the necessary foundation for its admission under the business-records exception, *Jones v. John B. Dozier Land Tr.*, 2017 Ark. App. 23, 511 S.W.3d 869, and Nichols fails to explain how that foundation was met here. We therefore hold that the circuit court did not abuse its discretion in its ruling on Swindoll's third motion in limine.

12

We next address Nichols's related contention that the circuit court erred by granting summary judgment to appellees. We set out the applicable standard of review in *Cannady v. St. Vincent Infirmary Medical Ctr.*, 2018 Ark. 35, at 6, 537 S.W.3d 259, 263:

> The law is well settled regarding the standard of review used by this court in reviewing a grant of summary judgment. *See Repking v. Lokey*, 2010 Ark. 356, 377 S.W.3d 211. A circuit court will grant summary judgment only when it is apparent that no genuine issues of material fact exist requiring litigation and that the moving party is entitled to judgment as a matter of law. *Id.* The burden of proof shifts to the opposing party once the moving party establishes a prima facie entitlement to summary judgment, and the opposing party must demonstrate the existence of a material issue of fact. *Id.* After reviewing the undisputed facts, the circuit court should deny summary judgment if, under the evidence, reasonable minds might reach different conclusions from the same undisputed facts. *Id.* On appeal, this court determines if summary judgment was appropriate based on whether the evidentiary items presented by the moving party leave a material question of fact unanswered. *Id.* This court views the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Id.* This review is not limited to the pleadings but also includes the affidavits and other documents filed by the parties. *Id.*

To prevail on a claim of attorney malpractice, a plaintiff must show that the attorney's conduct fell below the generally accepted standard of practice and that such conduct proximately caused the plaintiff damages. *Evans v. Hamby*, 2011 Ark. 69, 378 S.W.3d 723. To prove proximate cause, we have held that the plaintiff must show that, but for the alleged negligence of the attorney, the result in the underlying action would have been different. *Id.*; *see also* AMI Civ. 1511 (2022) (stating that the first factor the jury must consider in deciding whether the plaintiff has proved proximate cause in an attorney-negligence action is whether the plaintiff would have prevailed in a case against the punitive defendant(s)). "In this respect, a plaintiff must prove a case within a case, as he or she must prove the merits

13

of the underlying case as part of the proof of the malpractice case." *Nash v. Hendricks*, 369 Ark. 60, 68, 250 S.W.3d 541, 547 (2007).

Swindoll's second motion for summary judgment relied on the circuit court's rulings on his motions in limine, which prevented Nichols from proving who the alleged tortfeasors were and from demonstrating that, but for appellees' negligence, she would have prevailed in her underlying tort suit. Nichols agrees that she had to prove the merits of her case against B & L as part of her malpractice action but argues that this included showing the jury the evidence that Swindoll had from her and her witnesses and his discovery to win her case against B & L. She contends that the circuit court erred by not allowing her to do so.

As discussed above, Nichols cites no authority to support the proposition that the rules of evidence do not apply in malpractice cases. She therefore had to demonstrate that the testimony and the evidence she intended to introduce at the trial were admissible. In addition to her testimony about B & L that was excluded by the circuit court, Nichols claims that she should have been allowed to introduce the insurance checks paid to B & L to prove that it was the owner of the trailer. She admits, however, that no witness would be available from either B & L or the insurance company to testify at trial regarding the authenticity of these documents or whether they qualified as business records under Rule 803(6). Accordingly, as Swindoll argued below, this evidence would also be inadmissible. Because Nichols failed to show that she could prove the identity of the alleged tortfeasors, she could not establish an essential element of her malpractice action, which was that appellees were the proximate cause of her damages. We therefore affirm the circuit court's grant of summary judgment.

14

In her third and fourth points on appeal, Nichols challenges the circuit court's rulings prohibiting the opinion testimony by Barry Brunstein and Deborah Barnes as to the cause of the accident and excluding any of Nichols's medical bills or records submitted more than thirty days before the trial that was initially scheduled for October 1, 2024.[5] Because we are affirming the circuit court's grant of summary judgment in favor of appellees, however, these issues are moot. *See, e.g., Convent Corp. v. City of N. Little Rock*, 2021 Ark. 7, 615 S.W.3d 706 (stating that we do not review issues that are moot because to do so would be to render an advisory opinion). Thus, we do not address the merits.

Finally, in her fifth point on appeal, Nichols argues that the circuit court abused its discretion by denying her recusal motion. She contends that the circuit court demonstrated bias by not rescheduling the trial quickly enough and by granting summary judgment based on its "bizarre in limine rulings that had no basis in logic or law." Nichols further argues that the circuit court appeared to be biased by not granting her a hearing on her motion to recuse.

There is a presumption that judges are impartial, and the party seeking disqualification bears the burden of proving otherwise. *Taffner v. Ark. Dep't of Hum. Servs.*, 2016 Ark. 231, 493 S.W.3d 319. A circuit judge has a duty not to recuse himself or herself from a case where no prejudice exists. *Id.* A judge's recusal decision is discretionary and will not be reversed on appeal absent an abuse of discretion. *Ark. Voter Integrity Initiative, Inc. v. Thurston*, 2024 Ark. 43, 686 S.W.3d 477. To decide whether there was an abuse of

---

[5]Nichols also argues that the circuit court erred by not allowing her to testify as an expert on load shifting. However, the circuit court reserved ruling on this issue, and there is therefore no adverse ruling to address.

discretion, we review the record to see if any prejudice or bias was exhibited. *Id.* The mere fact of adverse rulings is not enough to demonstrate bias. *Taffner, supra.*

Nichols has failed to demonstrate any prejudice or bias on the part of the circuit court in this case. The circuit court postponed Nichols's initial trial date in October 2024 because the "first out" case, which the court explained was an older case, needed to be tried instead. The court then reset the trial for May 2025, which was well within its discretion. The fact that Nichols expressed a preference for an earlier trial date does not show that the circuit court was prejudiced against her. We have recognized that it is crucial to our judicial system that circuit courts retain the discretion to control their dockets, and this includes the trial calendar. *Nat'l Front Page, LLC v. State ex rel. Pryor*, 350 Ark. 286, 86 S.W.3d 848 (2002). Nor do the circuit court's rulings granting summary judgment in favor of appellees and granting Swindoll's motions in limine demonstrate bias, no matter how strongly Nichols disagrees with them. *Taffner, supra.* Even if the circuit court had erred with respect to these rulings, this alone would not establish grounds for recusal, and we caution that allegations of bias are not to be lodged lightly.

Nichols also claims that the circuit court was required to grant her request for a hearing on her recusal motion and that the court's failure to do so further demonstrates bias. She is incorrect that a hearing is always required on a motion to recuse. Instead, we have held that no hearing is required if the moving party's motion is devoid of any facts supporting his or her assertion of bias, and there are no issues of fact or law to be raised in a hearing. *See, e.g., Stilley v. Fort Smith Sch. Dist.*, 367 Ark. 193, 238 S.W.3d 902 (2006). The case Nichols cites, *Ferren v. USAA Insurance Co.*, 2015 Ark. App. 477, 469 S.W.3d 805, is

16

clearly distinguishable, as the moving party in that case presented evidence that the circuit court had called his counsel an obscene name, blamed counsel for the judge having an opponent in a recent bid for reelection, and stated that counsel believed he should get special favors because of who he was. Absolutely no such evidence of bias was presented by Nichols in her recusal motion, and the circuit court was not required to hold a hearing. Accordingly, the circuit court did not abuse its discretion by denying Nichols's motion to recuse, and we affirm on this point.

Affirmed.

BRONNI, J., concurs.

**NICHOLAS J. BRONNI, Justice, concurring.** I agree with the majority's disposition but not its reasoning. James Swindoll and Chuck Gibson are entitled to judgment as a matter of law because Rebecca Nichols hasn't made a colorable claim of legal malpractice. Nichols's claim ultimately rests on a misunderstanding of Arkansas law. She claims that Swindoll and Gibson committed malpractice because they failed to properly serve a complaint they filed on her behalf against unknown tortfeasors within 120 days and that, as a result, her lawsuit was dismissed for lack of service. But nothing requires service on unknown tortfeasors within 120 days of filing the complaint. *See* Ark. R. Civ. P. 4(i)(3) (excepting complaints against unknown tortfeasors from the service timing requirements); Ark. Code Ann. § 16-56-125. Thus, Swindoll and Gibson didn't commit malpractice by failing to do something Arkansas law doesn't require—and that's true even if the circuit court mistakenly dismissed the complaint Swindoll and Gibson filed on Nichols's behalf.

17

And reviewing this matter *de novo*, as our case law requires, *see Gates v. Hudson*, 2025 Ark. 48, at 5, S.W.3d 142, 146, that's what I'd hold.[6]

I concur in the judgment only, not the majority's reasoning.

*Harry McDermott*, for appellant.

*Barber Munson*, by: *G. Spence Fricke*, *Ben C. Hall*, and *Tristan Bennett Franks*, for appellee James Swindoll.

---

[6] The majority simply block quotes the standard trial courts use to resolve summary judgment motions. That's not a standard of review. But by conducting the same analysis as the circuit court, the majority applies the appropriate standard—*that is*, it reviews the circuit court's order de novo.